**ICELANDIC COAST GUARD**

v.

**UNITED TECHNOLOGIES CORP.,
United Technologies Int'l, Inc.,
and Sikorsky Aircraft.**

**Civ. No. H–85–900(JAC).**

United States District Court,
D. Connecticut.

Aug. 18, 1989.

Michael L. Bolos, Shorewood, Ill., for plaintiff.

Richard J. Kenny, Jack G. Steigelfest, Howard, Kohn, Sprague & FitzGerald, Hartford, Conn., for defendants.

## RULING ON MOTION FOR SUMMARY JUDGMENT

JOSÉ A. CABRANES, District Judge:

This case involves the November 8, 1983 crash of an Icelandic Coast Guard ("ICG") helicopter into a fjord off the coast of Iceland.[1] This action by the ICG is a diversity action under tort theory for loss of the helicopter and for consequential damages.[2] ICG alleges that the helicopter was unreasonably dangerous and defective, particularly in the construction of the sliding cargo door and the emergency flotation sys-

---

1. This case has been consolidated with four wrongful death actions filed by Paul Hudon as the representative of the decedents Sigurjon Ingi Sigurjonsson (Civ. No. H–86–1438 (JAC)), Bjarni Johannesson (Civ. No. H–86–1437 (JAC)), Thorhallur Karlsson (Civ. No. H–86–1436 (JAC)), and Bjorn Jonsson (Civ. No. H–86–1435 (JAC)), who were killed in the November 8, 1983 helicopter crash in Iceland. In those four cases the plaintiffs seek recovery under the Death on the High Seas Act, 46 U.S.C. App. § 761 et seq. ("DOHSA"). Amended complaints in admiralty filed May 31, 1989 allege that each decedent's dependent relatives sustained "substantial pecuniary loss by reason of [decedent's] wrongful death and loss of earnings, services, consortium, society, tutelage and moral guidance which would have accrued to them but for the wrongful death of [decedent]." At a hearing held on May 26, 1989, the plaintiffs' claims for loss of consortium and society in those four cases were stricken from the complaints upon the consent of the parties. *See Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) (recovery under DOHSA limited to pecuniary losses).

2. The plaintiff indicated in July 1988 that it would seek leave to file an amended complaint stating claims under breach of contract and breach of warranty theories. *See* (Plaintiff's) Response to Motion for Summary Judgment (filed July 20, 1988) ("Plaintiff's Response") at 8. At oral argument on May 26, 1989, plaintiff indicated that a proposed amended complaint would be filed by June 5, 1989, but neither a motion for leave to amend nor a proposed amended complaint has been filed with the court.

tem. Plaintiff seeks damages for the cost of a replacement aircraft and additional expenses in connection with the search for the crewmen, recovery of the wreckage, loss of use of the aircraft, and training of replacement flight crews. The ICG further seeks punitive damages and attorneys' fees under the Connecticut products liability statutes, Conn.Gen.Stat. §§ 52–240a and –240b.

The three defendants seek summary judgment as to ICG's claims for economic loss. Defendants argue that admiralty law governs plaintiff's claims in this matter and does not recognize a tort action for economic damages for loss of the helicopter and the related damages alleged by plaintiff. For the reasons stated below, defendants' motion for summary judgment is granted as to ICG's claims for commercial economic losses, including recovery and replacement of the aircraft and training of replacement crews, but is denied as to ICG's claims for economic losses associated with the wrongful death of its crew members, including the search for and recovery of the bodies.

## BACKGROUND

ICG alleges that in 1977 it contracted with the three defendants, United Technologies Corporation, United Technologies International, and Sikorsky Aircraft, for the purchase of a Sikorsky model S–76A helicopter, which then was manufactured by defendants in 1980.[3] The following facts are not in dispute.[4] The helicopter was purchased for ICG use over and around the Icelandic coast.[5] The helicopter, which was registered in Iceland, was operated and maintained by the Icelandic Coast Guard and was used for coast guard patrol and rescue operations.[6] On November 8, 1983, the helicopter took off from the Icelandic Coast Guard Vessel ODINN on a routine night training mission and patrol in the Jokulfirdir fjords of northwest Iceland.[7] The helicopter was in flight for approximately one minute when it crashed into the ocean.[8] A search by lifeboats from the ODINN and boats from a nearby fishing fleet was initiated promptly, but all four of the helicopter's crew members perished.[9]

The wreck of the helicopter was located on the bottom of the fjord on November 10, 1983;[10] the right-hand sliding door was recovered from the fjords by a shrimp boat on April 19, 1985.[11] Investigation of the accident indicates that the helicopter sank without deployment of its emergency flotation gear.[12] The record also indicates the track mechanism on the sliding door on the right side of the helicopter failed and that the door was deflected upwards into the main rotor.[13]

ICG alleges that the helicopter was unreasonably dangerous and defective in the sliding cargo door and the placement of the arming and activation controls for the emergency flotation system on the instru-

**3.** Complaint (filed Oct. 22, 1985) ("Complaint") ¶¶ 7–8.

**4.** Plaintiff does not dispute the defendants' Statement of Material Facts Not in Dispute (filed June 27, 1988) ("Statement of Facts"). *See* Plaintiff's Response at 2.

**5.** Statement of Facts ¶ 2.

**6.** *Id.* ¶¶ 2, 6; Icelandic Directorate of Civil Aviation, Aircraft Accident Report (dated Feb. 28, 1985), attached as Exhibit A to Plaintiff Icelandic Coast Guard's Supplement to Response to Motion for Summary Judgment as to Hull Loss Claims (filed June 15, 1989) ("Accident Report").

**7.** Statement of Facts ¶¶ 3–4.

**8.** Accident Report at 4.

**9.** *Id.*

**10.** *Id.* at 16–17.

**11.** Icelandic Directorate of Civil Aviation, Aircraft Accident Report Addendum (dated Feb. 28, 1986), attached as Exhibit B to Plaintiff Icelandic Coast Guard's Supplement to Response to Motion for Summary Judgment as to Hull Loss Claims (filed June 15, 1989) ("Accident Report Addendum").

**12.** Accident Report at 23, 35; Accident Report Addendum at 8 ("It is evident that the vertical contact with the water was relatively gentle, but since the pilots had been unable to activate the emergency flotation system, for reasons undetermined, the helicopter overturned and sank.").

**13.** Accident Report Addendum at 7–8.

ment console assembly.[14] ICG seeks actual damages for replacement of the aircraft, recovery of the wreck, loss of use of the aircraft, training of replacement flight crews, and costs of the search for the crewmen.[15] ICG further alleges that the defendants' conduct in delivering the helicopter to plaintiff with the alleged defects constituted reckless disregard for the safety of users of the aircraft,[16] and it seeks punitive damages under Conn.Gen.Stat. § 52–240b.[17] ICG also seeks attorneys' fees under Conn.Gen.Stat. § 52–240a, which provides for attorneys' fees for a prevailing party in a products liability action where the court determines that a claim or defense was frivolous.

## DISCUSSION

### Summary Judgment Standards

The court may grant summary judgment where the moving party has demonstrated that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) ("[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). A motion for summary judgment thus is the appropriate vehicle "to isolate and dispose of factually unsupported claims or defenses." Celotex Corp. v. Catrett, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

In making a summary judgment determination, the court must resolve all ambiguities and draw all reasonable inferences in favor of the plaintiff. Anderson v. Liberty Lobby, Inc., 477 U.S. at 255, 106 S.Ct. at 2513; Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir.1986) (Feinberg, C.J.),

cert. denied, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). The court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). However, a party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." Knight v. U.S. Fire Ins. Co., 804 F.2d at 12. Mere conclusory allegations and denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980); British Airways Bd. v. Boeing Co., 585 F.2d 946, 952 (9th Cir.1978), cert. denied, 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, 106 S.Ct. at 1355.

Defendants seek summary judgment on the theory that there is no genuine issue of material fact in this case as to the liability of defendants for the economic losses claimed by the plaintiff. Defendants' argument has three steps: first, that this aviation case is an admiralty case; second, that admiralty law will not recognize a tort claim for the commercial economic losses alleged by the plaintiff; and third, that bringing this action under diversity jurisdiction rather than under admiralty does not permit recovery under non-admiralty law.

### Admiralty Jurisdiction

■ It is clear, and the parties have agreed, that the test for determining whether admiralty law governs a particular controversy is that (1) the tort had a mari-

**14.** Complaint ¶ 9.

**15.** Id. ¶ 12.

**16.** Id. ¶ 14.

**17.** Conn.Gen.Stat. § 52–240b provides:

Punitive damages may be awarded if the claimant proves that the harm suffered was a result of the product seller's reckless disregard for the safety of product users, consumers or others who were injured by the product.

time locality, and (2) the act and omissions alleged had some "maritime nexus," that is, some significant relationship to traditional maritime activity. The "maritime nexus" requirement has been explicitly adopted only for torts occurring on navigable waters within the United States. *See Executive Jet Aviation, Inc. v. City of Cleveland,* 409 U.S. 249, 268, 93 S.Ct. 498, 504, 34 L.Ed.2d 454 (1972). In this case, the parties do not dispute that the situs of the crash in question was the so-called "high seas."[18] The Supreme Court has not reached the question of whether a maritime nexus is required for torts on the high seas, *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986).

■ Assuming that a maritime nexus is necessary for admiralty jurisdiction over torts on the high seas, ICG urges that this aviation tort case lacks the required relationship to traditional maritime activity. I disagree. While the helicopter in this case was land-based, it was specially equipped with an emergency flotation system for ocean landings and on the night of the crash had taken off from the Icelandic Coast Guard Vessel ODINN. In addition, there are some indications in the record that this helicopter was manufactured by the defendants for the ICG specifically for use in marine rescue and other maritime operations.[19] While it could be said that the helicopter was engaged in "routine flight training" when it crashed, that flight training was specifically maritime in nature.[20] *Cf. Brons v. Beech Aircraft Corp.,* 627 F.Supp. 230, 233 (S.D.Fla.1985) (pilot training flight which began and was to end

in Florida had no direct relationship to maritime activity; maritime situs of crash was "totally fortuitous").

The law is well settled that actions involving aircraft engaged in activities traditionally performed by waterborne vessels fall within admiralty jurisdiction. *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 2492, 91 L.Ed.2d 174 (1986) (helicopter ferrying passengers from offshore drilling platform to shore was "engaged in function traditionally performed by waterborne vessels," so admiralty jurisdiction properly invoked). Flights by a coast guard aircraft in preparation for or connected with marine rescue and patrol operations clearly bear a significant relationship to traditional maritime activities for purposes of admiralty jurisdiction. *See Kelly v. United States,* 531 F.2d 1144, 1147 (2d Cir.1976) (admiralty jurisdiction extends to negligence action regarding rescue operations of United States Coast Guard). Accordingly, plaintiff's claims properly fall within this court's admiralty jurisdiction.

*Claims for Commercial Economic Loss*

■ Defendants urge that admiralty law does not recognize the type of loss claimed by the plaintiff in this case.[21] Defendants argue that while principles of products liability have been incorporated into admiralty law as part of the general maritime law, *see East River Steamship Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 106 S.Ct. 2295, 2299, 90 L.Ed.2d 865 (1986), no products liability claim lies in admiralty where a commercial party alleges purely commercial economic loss, *id.* 106 S.Ct. at 2302, that is, where "no person or other property is damaged[,]" and "the resulting

---

18. *See* Statement of Facts ¶ 1 (location of crash).

19. *See, e.g.,* Statement of Facts ¶ 2.

20. The plan for the helicopter flight was to "exercise night hovering and hoist operations over the ship's helideck" and then to proceed directly for a patrol flight. Accident Report at 2. Earlier that day the helicopter had been used by the ICG to search for missing seamen at a shipwreck. *Id.*

21. Plaintiff's Response (filed July 20, 1988) and plaintiff's Supplement to Response to Motion for Summary Judgment as to Hull Loss Claim

(filed June 15, 1989) do not address the second and third steps of defendants' argument for summary judgment. In those briefs, plaintiff argues only that the claims in this matter do not fall within admiralty jurisdiction. It is clear, however, that the plaintiff had notice and opportunity to address defendants' further arguments regarding the results of application of admiralty law, both in the briefs and supplemental briefs and at oral argument on May 26, 1989. This matter therefore clearly is ripe for determination by this court.

loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." *Id.*

In *East River*, the Court held that "a manufacturer in a commercial relationship has no duty under either a negligence theory or strict products liability theory to prevent a product from injuring itself." *Id.* The Court emphasized the "need to keep products liability and contract law in separate spheres," [22] *id.*, and noted that, because parties may allocate the risk of product malfunction resulting in injury to itself as they see fit, contract law and the law of warranty are better suited to resolve the resulting commercial controversies than is the law of products liability, *id.* 106 S.Ct. at 2303; *see also id.* at 2300 ("[T]he injury suffered—the failure of the product to function properly—is the essence of a warranty action, through which a contracting party can seek to recoup the benefit of its bargain."). *East River* involved purely economic losses caused by alleged manufacturing defects; there were no allegations of personal injury or property damage other than to the ship turbines in question. *Id.* at 2296–97 (factual background).

The Supreme Court in *East River* noted that some courts had rejected the approach adopted by the Court because they found it "arbitrary that economic losses are recoverable if a plaintiff suffers bodily injury or property damage, but not if a product injures itself." *Id.* at 2301; *see, e.g., Emerson G.M. Diesel, Inc. v. Alaskan Enterprise*, 732 F.2d 1468, 1474 (9th Cir.1984) ("Requiring recovery for economic loss to depend on the presence of personal injury or property damage is an arbitrary distinction leading to opposite results in cases that are virtually the same."). Although *East River* explicitly rejected the approach of those courts permitting recovery for economic loss, 106 S.Ct. at 2302, it did not fashion or require a rule generally prohibiting recovery of commercial economic losses

while permitting a commercial plaintiff to recover economic losses if *some other person* suffered bodily injury. Such arbitrariness is not required by *East River* and, indeed, would defeat the rationale of *East River*—that is, that the greater protection of products liability is needed by persons injured by defective products, while warranty provides an adequate remedy for commercial economic losses.

Purporting to distinguish *East River* on the basis of the presence of personal injury, one case from this district holds that claims for commercial economic losses are cognizable in an admiralty action relating to a helicopter crash in which a number of deaths resulted. *See Comind, Companhia de Seguros v. Sikorsky Aircraft*, 116 F.R.D. 397, 416–417 (D.Conn.1987) (construing *East River* to permit liability where defective product injures user or third party and holding that because claim arises from same accident that caused injury, claim is not barred as action for economic damages only); *id.* at 422–24 (ruling on motion for reconsideration and adhering to previous ruling distinguishing *Comind* from *East River* by the presence of personal injury to a third party in *Comind*). The plaintiff in *Comind* was the insurer rather than the owner of the helicopter, but there is no indication in *Comind* that the insurer was seeking recovery for any personal injury claims; the statement of facts indicates only that the insurer paid the owner of the helicopter for the loss of the aircraft, and the personal injuries resulting from the helicopter crash were not the subject of the *Comind* action.

The better rule, it is respectfully submitted, would not make recovery in tort for commercial economic claims hinge on the mere existence of related but separate claims for personal injury or wrongful death. *See Orion Ins. Co. v. United Technologies Corp.*, No. 88–8474 (E.D.Pa. June 22, 1989) (1989 WESTLAW 70693) (criticizing *Comind* and dismissing action for

---

22. The sharp distinction between tort and contract drawn in *East River* suggests the truth of Maitland's oft-quoted statement that the "forms of action we have buried, but they still rule us from their graves." F. Maitland, *The Forms of Action at Common Law* 2 (A. Chaytor & W. Whittaker ed.1936).

strictly economic loss in case involving maritime helicopter crash causing fatality); *ERA Helicopters, Inc. v. Bell Helicopter Textron, Inc.*, No. 85–5197 (E.D.La. May 13, 1987) (1987 WESTLAW 10868) (dismissing causes of action for negligence and strict liability where claim is for recovery of value of the aircraft and related personal injury claims were not subject of action).

In this case, this plaintiff's claims for replacement of the aircraft, recovery of the wreck, loss of use of the aircraft, and training of replacement flight crews are commercial economic losses resulting from damage to the helicopter itself. The mere existence of separate claims for wrongful death does not make those claims for commercial economic loss cognizable in admiralty, and summary judgment as to plaintiff's claims for purely commercial economic losses therefore is appropriate.

■ On the other hand, the claims for the costs of searching for the helicopter's crew (and, impliedly, the costs of recovering the two bodies that were found) arise out of "personal injury" claims and are distinguishable from plaintiff's other claims on that basis. The claims for search and recovery expenses are attributable to and are inextricably tied to the injuries to the crewmen resulting from the alleged defects in the helicopter. *See Damin Aviation Corp. v. Sikorsky Aircraft*, 705 F.Supp. 170, 176 (S.D.N.Y.1989) (distinguishing losses attributable to personal injury from purely economic losses); *see also S.J. Groves & Sons v. Aerospatiale Helicopter Corp.*, 374 N.W.2d 431 (Minn.1985) (recovery for economic losses limited to losses attributable to personal injury or damage to other property). Products liability claims for damages arising out of personal injury are cognizable in admiralty. *See East River*, 106 S.Ct. at 2299. Accordingly, the plaintiff's claims for costs of the search for the crew survive defendants' motion for summary judgment.[23]

*Diversity Jurisdiction and State Law Claims*

The defendants finally argue that no state law claims survive the invocation of admiralty jurisdiction in this matter. The admiralty jurisdiction of the federal courts is exclusive, but the authorizing statute includes a provision "saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1). The "saving to suitors" clause reserves to plaintiffs the right to proceed in an ordinary civil action with most maritime claims. *See* 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3672 (2d ed. 1985) ("Wright"). The plaintiff in this case brought this action in federal court as a diversity suit,[24] and state law therefore may provide the basis for plaintiff's claims in this action.

Both parties have alluded to a threshold choice of law issue in this case, and defendants have suggested that the applicable law is the law of Iceland. Since the case is brought as a diversity case, this court must apply the choice of law rules of the forum state, Connecticut. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Despite recent suggestions to the contrary, *see, e.g., McKernan v. United Tech. Corp.*, 717 F.Supp. 60, 65 (D.Conn.1989) (indicating that Connecticut choice of law analysis embraces the balancing of interests test embodied in the Restatement (Second) of Conflict of Laws),

**23.** In this case the plaintiff happens to be the Icelandic agency responsible for search and rescue, and ICG claims economic losses related to those search efforts. Analysis of these particular claims for search expenses therefore may be muddied by the general American rule that expenses for search and rescue operations are a public responsibility and may not be recovered from tortfeasors in the absence of authorizing legislation. *See District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D.C.Cir.1984); *see also In re: Sincere Navigation Corp.*, 327 F.Supp. 1024 (E.D.La.1971) (where maritime collision involved a federal government vessel, government can recover only expenses that would not have been incurred had the collision been between two private vessels). Nonetheless, defendants have raised no such challenge to these claims. Insofar as claims for the cost of search and recovery are cognizable at all, those claims are related to personal injury and are distinguishable from the plaintiff's claims for other losses.

**24.** Complaint ¶ 1.

Connecticut has not completely abandoned the traditional *lex loci delicti* rule for choice of law questions in tort cases. *See O'Connor v. O'Connor*, 201 Conn. 632, 519 A.2d 13, 21–22 (1986) (declining to discard *lex loci* entirely and applying other choice of law principles where *lex loci* would produce "arbitrary, irrational result"); *see also Katz v. Gladstone*, 673 F.Supp. 76, 79–80 n. 2 (D.Conn.1987). *See generally* Brilmayer, *The Choice of Law Revolution in Connecticut*, 62 Conn.B.J. 373, 374 (1988) (urging caution in departing from *lex loci* and in moving into the "morass of modern choice of law theory"). Nonetheless, under either "traditional" choice of law theory or the assertedly "modern" choice of law principles found in the Restatement (Second) of Conflict of Laws, a strong case can be made for the application of Icelandic law. *See Resnick v. Sikorsky Aircraft*, 660 F.Supp. 415, 417–18 (D.Conn. 1987) (finding most "significant" contacts lie in state that was domicile of plaintiffs' decedents, place where allegedly defective product was maintained, and place of injury).

■ In any event, it appears that the choice of law question is not relevant to disposition of this summary judgment motion. Even if plaintiff's commercial losses would be cognizable under the applicable state tort law products liability scheme of either Iceland or Connecticut,[25] claims for such losses nonetheless are not permitted where they would be in conflict with the applicable substantive admiralty law. The "saving to suitors" clause permits use of state law—that is, non-admiralty—remedies only to the extent that those remedies do not conflict with governing federal maritime standards. *Offshore Logistics, Inc. v. Tallentire*, 477 U.S. 207, 106 S.Ct. 2485, 2495, 91 L.Ed.2d 174 (1986) (so-called "reverse-*Erie* " doctrine requires that substantive state law remedies conform to federal maritime standards, referring to *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)); *see also In the matter of DFDS Seaways (Bahamas) Ltd.*, 684 F.Supp. 1160, 1162 (S.D.N.Y.1987) ("It is well settled that federal maritime law is to be applied to the exclusion of *conflicting* state law even in state courts."). *See generally* 14 Wright § 3672.

■ Because "whether stated in negligence or strict liability, no products-liability claim lies in admiralty when the only injury claimed is economic loss," *East River*, 106 S.Ct. at 2305, plaintiff cannot bring those claims for commercial economic loss under any non-admiralty theory, whether based on the laws of Connecticut or Iceland. However, the claims for losses to the plaintiff arising out of the personal injuries to the members of the crew may be brought as state law tort claims. Claims for punitive damages and attorney's fees in this diversity action likewise claims do not contravene federal admiralty law.

---

**25.** Plaintiff's theory of the case appears to rest on Connecticut products liability law, and under Connecticut law, an action alleging harm from a product may only be asserted as a single claim. *See* Conn.Gen.Stat. § 52–572n(a) (product liability claim for harm caused by product is in lieu of all other claims against product sellers); *see also McKernan v. United Technologies Corp.*, 717 F.Supp. 60, 65 (D.Conn. July 10, 1989) (1989 WESTLAW 76906) (Ruling on Defendants' Motions for Summary Judgment). Current Connecticut product liability law clearly excludes commercial loss caused by a product from the harms compensable under the products liability scheme. *See* Conn.Gen.Stat. § 52–572m(d) (definition of "harm" does not include commercial loss as between commercial parties); Conn.Gen. Stat. § 52–572n(c) (action for commercial loss may be brought only under Uniform Commercial Code); *see also McKernan*, at 65–66. However, those sections of the products liability statute excluding commercial loss became effective June 14, 1984, that is, *after* the November 1983 helicopter crash that is the subject of this litigation. Thus plaintiff's claims are governed by the substantive law in force at the time of the accident, *see Collucci v. Sears, Roebuck & Co.*, 585 F.Supp. 529 (D.Conn.1984) (where action was based on facts which occurred before effective date of products liability statute, substantive law of products liability statute will not govern action); *see also Comind, Companhia de Seguros v. Sikorsky Aircraft*, 116 F.R.D. 397, 418–19 (D.Conn.1987) (commercial loss exclusions in products liability statute effective June 14, 1984 not applicable in action filed in 1982 relating to 1980 helicopter crash), and it therefore appears that, if Connecticut law is applicable, plaintiff's only claim in this case must be a products liability action under the Connecticut statutory scheme as it existed prior to the 1984 exclusion of commercial losses.

## CONCLUSION

For the reasons stated above, defendants' Motion for Summary Judgment as to Hull Loss Claims (filed June 27, 1988) is granted in part (as to claims for replacement of the aircraft, recovery of the wreck, loss of use of the aircraft, and training of replacement flight crews) and denied in part (as to claims for costs of the search for the crew and for punitive damages and attorneys' fees related to those claims).

It is so ordered.