CONNECTICUT GENERAL LIFE
INS. CO. and Colonial Metro
Limited Partnership

v.

GRODSKY SERVICE, INC. t/a Harry
S. Grodsky & Co., Inc.

v.

SVA, INC.

v.

METRAFLEX CO.

CONNECTICUT GENERAL LIFE
INS. CO. and Colonial Metro
Limited Partnership

v.

SVA, INC.

v.

METRAFLEX CO.

Civ. Nos. H–88–712 (JAC),
H–89–430 (JAC).

United States District Court,
D. Connecticut.

Dec. 10, 1991.

Miles A. Jellinek, Cozen & O'Connor, P.C., Philadelphia, Pa., for Connecticut General Life Ins. Co.

Stuart G. Blackburn, Suffield, Conn., David Sheridan, Tarlow, Levy, Harding & Droney, for Colonial Metro Ltd. Partnership.

Jack G. Steigelfast, Richard J. Kenny, Howard, Kohn, Sprague, & Fitzgerald, Hartford, Conn., for Grodsky Service, Inc. t/a Harry S. Grodsky & Co., Inc.

James E. Wildes, Danforth & Sizemore, New Haven, Conn., for SVA, Inc.

Leonard M. Isaac, Maureen D. Cox, Carmody & Torrance, Waterbury, Conn., for Metraflex Co.

RULING ON MOTIONS FOR SUMMARY
JUDGMENT ON PRODUCTS
LIABILITY DAMAGES

JOSÉ A. CABRANES, District Judge:

Plaintiffs Connecticut General Life Insurance Company ("CIGNA") and Colonial Metro Limited Partnership ("Colonial") bring these actions against defendants Grodsky Service, Inc. t/a Harry S. Grodsky & Co., Inc. ("Grodsky"), and SVA, Inc. ("SVA"), to recover damages resulting from a water pipe rupture in the Metro Center building in Hartford. The building was owned by Colonial and occupied by CIGNA. Defendant Grodsky installed the

pipe connectors alleged to have ruptured, having purchased them from SVA, the distributor of the pipe connectors. Defendants have cross-claimed against each other and the Metraflex Company ("Metraflex"), the manufacturer of the pipe connectors in question. The parties have filed three motions for summary judgment, all raising the identical issue—namely, whether any or all of the damages asserted by CIGNA are "commercial losses" not recoverable under Connecticut's products liability statute, Conn.Gen.Stat. §§ 52–572n(c), 52–572m(b). For the reasons stated below, SVA's Motion for Summary Judgment (filed July 24, 1991) and Metraflex's Motion for Summary Judgment (filed Sept. 13, 1991) are each granted, and CIGNA's Cross–Motion for Partial Summary Judgment (filed July 31, 1991) is denied.

## BACKGROUND

Although this litigation has been plagued by duplicative filings, the parties have conveniently adopted SVA's Statement of Material Facts Pursuant to Local Rule of Civil Procedure 9(c) (filed July 24, 1991) ("SVA Statement").[1] See Metraflex's Statement of Material Facts Pursuant to Local Rule of Civil Procedure 9(c) (filed Aug. 21, 1991) (adopting SVA Statement); CIGNA's Statement of Material Facts Pursuant to Local Rule of Civil Procedure 9(c)(1) (filed Aug. 5, 1991) (adopting SVA's statement but rejecting SVA's characterization of certain expenses as "business interruption" expenses).[2]

At the time of the pipe rupture on June 16, 1987, CIGNA, SVA, and Metraflex were all commercial parties. SVA Statement ¶ 1. CIGNA has claimed damage from the incident in various forms, including physical water damage to items in its offices. However, only the following asserted damages from the pipe rupture incident are in issue in the instant motions:

(1) Salaries paid to its employees for the three and one half days the Metro Center was unoccupied following the June 16, 1987, pipe rupture. These total $335,862. Id., ¶ 4.

(2) Fringe benefits paid to employees allocated to the three and one half days the Metro Center was unoccupied after the pipe rupture. These amount to $57,097. Id., ¶ 5.

(3) Taxes paid on the salaries paid to its employees allocated to the three and one half days the Metro Center was unoccupied after the pipe rupture. These amount to $30,933. Id., ¶ 6.

(4) Rent paid for the three and one half days the Metro Center was unoccupied after the pipe rupture. This totals $99,000. Id., ¶ 7.

(5) Cost of coffee, danishes, and lunch provided to CIGNA employees who worked during the three and one half days after the pipe rupture when the Metro Center was unoccupied. This amounts to $3,998. Id., ¶ 8.

(6) Lost sales at the cafeteria in the Metro Center for the three and one half day period after the accident when the Metro Center was unoccupied. This totals $6,240. Id., ¶ 9.

(7) Overtime paid to CIGNA employees who worked during the three and one half days after the pipe rupture when the Metro Center was unoccupied doing cleanup, moving files, and re-establishing normal work flow. This amounts to $22,921. Id., ¶ 10.

(8) Fringe benefits paid to employees who worked during the three and one half day period cleaning up as described in item (7). These amount to $3,842. Id., ¶ 11.

---

1. This was filed in Civil No. H–89–430 (JAC). SVA filed the identical statement of facts in opposition to CIGNA's cross motion for summary judgment in Civil No. H–88–712 (JAC) on August 21, 1991.

2. Although Count IV of the Amended Complaint (filed Oct. 19, 1989, in Civil No. H–88–712 (JAC)) against Grodsky explicitly sounds in products liability, Grodsky states that "Plaintiff pursues three counts against Grodsky, sounding in negligence, breach of contract and breach of implied warranties." Memorandum of Law in Support of Motion for Partial Summary Judgment (filed Sept. 13, 1991). Grodsky did not brief the issue of whether any of CIGNA's damages may not be recovered on the products liability theory, and did not participate in oral argument on that issue.

(9) Taxes paid on the salaries of employees who worked as described in item (7). This amounts to $2,081. *Id.*, ¶ 12.

(10) "Unearned" parking expenses following the pipe rupture in the amount of $5,044. *Id.*, ¶ 13.

(11) Cost of "rush" computer work following the pipe rupture. This amounts to $5,535. *Id.*, ¶ 14.

## DISCUSSION

 Connecticut's product liability statute displaces the common law of products liability. Conn.Gen.Stat. §§ 52–572m(b), 52–572n(a). Under the statutory scheme, the victims of defective products may recover for "harm," Conn.Gen.Stat. § 52–572n(a), which is defined to include "damage to property, including the product itself, and personal injuries including wrongful death." Conn.Gen.Stat. § 52–572m(d). The definition of harm itself states that "[a]s between commercial parties, 'harm' does not include commercial loss." *Id.* Furthermore, a different and discrete subsection of the statute provides that

> As between commercial parties, commercial loss caused by a product is not harm and may not be recovered by a commercial claimant in a product liability claim. An action for commercial loss caused by a product may be brought only under, and shall be governed by, title 42a, the Uniform Commercial Code.

Conn.Gen.Stat. § 52–572n(c).

Connecticut's statute does not define "commercial loss," and no state or federal appellate court has yet had occasion to consider its meaning. One state superior court opinion has defined the commercial loss exception rather narrowly. *See American Manufacturers Mutual Ins. Co., et al. v. Harrington Hoists, Inc.*, 4 C.S.C.R. 564 (1989). Citing the testimony of a non-legislator before passage of the statute, the court held that "commercial loss" refers only to "consequential economic loss," such as lost profits or lost commercial opportunities, and does not prevent recovery of property damage between commercial parties. *Id.* at 565. Moreover, the court

reasoned that to read the commercial loss exclusion as preventing all recovery under the products liability statute between commercial parties would render the word "commercial" in the statute superfluous; had the legislature intended completely to exclude products liability claims by commercial parties, the court stated, it could have done so more plainly. *Id.* Applying this interpretation, the *Harrington Hoists* court held that damage to an electric engine caused by a break in an allegedly defective hoist chain could be recovered in a commercial party's suit against the chain's manufacturer, *id.*, but profits lost as a result of the "downtime" after the break in the chain could not. *Id.* at 565 n. 1. It may be noted that *Harrington Hoists* on its facts did not address whether recovery was permissible for direct economic losses that are not physical property damage. Other state Superior Court opinions give the commercial loss exclusion broader scope. *See, e.g., Producto Machine Co. v. Ajax Magnethermic Corp.* 3 C.S.C.R. 66 (1987); *A. Mark Frank v. J.J. Landerman Roofing, Inc., et al.,* No. 328778, mem. decision (Ct.Super.Ct. Mar. 2, 1988), Metraflex Company's Memorandum in Opposition to Connecticut General Life Insurance Company's "Cross–Motion" for Summary Judgment (filed Aug. 21, 1991) ("Metraflex Memorandum in Opposition"), Ex.C. *See also United Security, Inc., et al. v. PGP Industries,* 5 C.S.C.R. 275 (1990) (excluding damages for overtime payments, increased Workers Compensation payments, extended medical insurance premium payments, and loss of business).

What appears to be the sole federal district court opinion on this aspect of the Connecticut products liability statute supports the view that both direct and consequential economic losses are excluded commercial losses. In *McKernan v. United Technologies Corporation, Sikorsky Aircraft Division,* 717 F.Supp. 60 (D.Conn. 1989), the plaintiffs had purchased a helicopter from the defendant manufacturer. Plaintiffs alleged that defects in the helicopter resulted in lost income resulting from "downtime" when the helicopter was

being modified as a result of the alleged defects (presumably lost fees for rental of the helicopter; plaintiffs operated an executive helicopter taxi service) and losses resulting from a reduced resale price owing to the defects. *Id.* at 62–63. The court found that the diminished resale value was not "property damage," *id.* at 65–66 & n. 5, and held that the alleged damages were commercial losses not recoverable under § 52–572n(c). *Id.* at 66. While the lost profits are safely characterized as consequential losses, the reduced resale price of the helicopter could be categorized as "direct" economic loss: the plaintiffs argued that the alleged defects in the helicopter reduced its resale value and there was no intermediate causal factor.[3]

As noted by the court in *Harrington Hoists,* the Connecticut products liability statute is drawn largely from the Uniform Products Liability Act proposed by the Department of Commerce, 44 Fed.Reg 62717 *et seq.* (1979) ("Uniform Act"). Section 102(F) of the Uniform Act defines recoverable "harm" to include "property damage" but excludes "direct or consequential economic loss." This definition is not restricted to commercial parties. The most plausible interpretation of the Connecticut "commercial loss" exclusion is that it intended to adopt the Uniform Act's approach of excluding direct or consequential economic loss but restrict the exclusion to litigation between commercial parties. Accordingly, while property damage, defined as physical damage and including damage to the product itself, could be recovered, direct or consequential economic damages could not. This is the apparent majority rule among the states. *See, e.g., Mercer v. Long Mfg. N.C., Inc.,* 665 F.2d 61, 69–70 (5th Cir.1982); 2 Marshall S. Shapo, *The Law of Products Liability* ¶¶ 27.01–27.09 (2d ed. 1990); *id.* ¶¶ 27.02[2][d][i], 27.05–27.05[1] (collecting cases).

It is not necessary to decide here whether the Connecticut statutory scheme follows the Uniform Act's allowance of "property damage."[4] Some Connecticut courts have indicated that it does not. In *Producto Machine Co.,* the plaintiff had purchased an allegedly defective furnace from the defendant. While the plaintiff was using the furnace in its business operations, 15 to 18 tons of molten iron ran out of an aperture plug, severely damaging the furnace and plaintiff's premises and resulting in loss of production and clean-up costs. The court held that all the damage, including the property damage to plaintiff's premises and to the furnace itself, was "commercial loss" not recoverable under the products liability statute. In *Landerman Roofing,* a case with facts similar to those here, allegedly defective roofing material manufactured by the defendant resulted in water damage sustained by commercial tenants and structural damage to the roof. The court excluded both damage claims as "commercial loss" under the products liability statute. As noted, whether physical property damage may be recovered is not in issue, and indeed Metraflex concedes in its brief that recovery for such damage is available. *See* Metraflex's Memorandum in Opposition at 8. It is enough to note that it would be inconceivable for the Connecticut scheme to deny recovery for physical property damage but to permit recovery for other direct or consequential economic loss, since physical property damage, when it occurs, is generally more easily calculated and a more proximate result of a defective product than economic losses, such as the employee overtime asserted here by CIGNA.

CIGNA agrees that "consequential" economic losses may not be recovered, and conceded at oral argument that the asserted lost sales of the Metro Center cafeteria

---

**3.** Any reliance by CIGNA on this court's opinion in *Icelandic Coast Guard v. United Technologies Corp.,* 722 F.Supp. 942 (D.Conn.1989), is misplaced. As the court then noted, any claims in that case under Connecticut law would be decided under the law in effect prior to enactment of the commercial loss exclusions in the Connecticut products liability statute. *Id.* at 949 n. 25.

**4.** The asserted losses to CIGNA listed above may not be characterized as "property damage," at least in the Uniform Act sense of physical damage to property, including damage to the product itself. *See* 44 Fed.Reg. at 62719 (comment on § 102(F)).

when the building was closed for three and one half days after the pipe rupture, *see supra* at page 898 (item (6)), could not be recovered. CIGNA contends, however, that "direct" economic losses may be recovered, and characterizes the damages listed above as "direct" rather than "consequential." This argument is not supported by the language of the Connecticut statute or the Uniform Act. Moreover, the proposed distinction is not one susceptible of ready judicial administration. Although the terms direct damages and consequential damages are frequently employed, the line between the two can become more metaphysical than real.

Exclusion of both direct and consequential economic losses is also supported by the principles underlying strict products liability. As the Supreme Court noted in *East River Steamship Corp. v. Delaval, Inc.,* 476 U.S. 858, 871–72, 106 S.Ct. 2295, 2302–03, 90 L.Ed.2d 865 (1986), strict products liability reflects a special solicitousness towards victims of personal injury. Such concerns are not present in litigation between commercial parties.

CIGNA argues that *McKernan* and *East River* are distinguishable in that in those cases the plaintiffs had contracted with the defendant manufacturers and had the benefit of warranties in the contract of sale. In support of their decisions not to award damages, both courts noted that limitations on the warranties reflected the parties' bargain, which would have been effectively set aside had recovery been permitted. This distinction has some slight basis in the statute itself, since § 52–572n(c) adverts to the Uniform Commercial Code as the source of any possible recovery of "commercial loss." CIGNA reasons that, since it was not a party to any contract with the defendants, imposition of liability here would not undo any contract; indeed, CIGNA argues that exclusion of recovery would in fact leave CIGNA without remedy against these defendants.

This line of reasoning, however, is not supported by the products liability statute

as a whole. The Connecticut products liability statute excludes recovery for certain losses as between *commercial* parties, not contracting parties. Furthermore, as noted, the principal rationale for strict products liability is compensation for personal injury victims. The fact that CIGNA is remediless as against these defendants is not as unfair as CIGNA suggests. Lessees in the position of CIGNA will ordinarily have a remedy against the landlord.[5] Moreover, commercial parties are in a better position than individual personal injury victims to insure against possible losses.

The foregoing considerations easily outweigh the testimonial comments of a non-legislator cited in *Harrington Hoists* to the effect that only "consequential" economic losses would be excluded. *See Savings & Loan League of Connecticut, Inc. v. CHFA,* 184 Conn. 311, 315 n. 1, 439 A.2d 978 (1981) (statements by non-legislators "are not admissible as a means of interpreting a legislative act and may not be considered."). I conclude that "commercial loss" as used in Conn.Gen.Stat. §§ 52–572m(b) and 52–572n(c) includes all economic loss, direct or consequential, though possibly not physical property damage and damage to the product itself. All of the asserted losses stated above are direct or consequential economic damages (but not property damage) and therefore may not be recovered under Connecticut products liability law.

## CONCLUSION

For the reasons stated above, SVA's Motion for Summary Judgment (filed July 24, 1991) and Metraflex's Motion for Summary Judgment (filed Sept. 13, 1991) are GRANTED. CIGNA's Cross–Motion for Summary Judgment (filed July 31, 1991) is DENIED.

It is so ordered.

5. Here the landlord is in bankruptcy proceedings pending in this district, but such a situation is the exception, not the rule.