Harry O. and Joan C. KLINE, individually and in their capacity as Executor of the Estate of Harry O. Kline, III, deceased, Plaintiffs,

v.

MARITRANS CP, INC., and Maritrans Operating Partners, L.P., Defendants.

Civ. A. No. 90–019–CMW.

United States District Court, D. Delaware.

April 13, 1992.

Motion For Limited Reargument Granted May 21, 1992.

Richard A. Zappa of Young, Conaway, Stargatt & Taylor, Wilmington, Del., for plaintiffs.

Donald E. Reid and Jon E. Abramczyk of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for defendants.

## OPINION

CALEB M. WRIGHT, Senior District Judge.

This action was brought by the parents of a deceased seaman alleging negligence under the Jones Act, 46 U.S.C. § 688 and unseaworthiness under general maritime law. This case is within the admiralty and general maritime jurisdiction of this Court.

On February 17, 1992, the defendants filed a motion and opening brief for summary judgment. Defendants contend that summary judgment should be granted as the plaintiffs are unable to prove causation, a necessarily element of their claim, and are unable to prove any entitlement to damages.

Briefing has been completed, neither party requested oral argument and the Court determined argument was not needed. Thus, this issue is now ready for decision. For the reasons stated below, defendants' motion for summary judgment will be granted in part and denied in part.

## I. FACTUAL BACKGROUND

Harry O. Kline, III ("Kline" or "decedent") was employed by Maritrans at the time of his death on December 16, 1988. At the time of his death, Kline was a mate aboard the tug *Patriot*, which was part of a tandem tug/barge operation. The vessels were moored in Fall River, Massachusetts the night that Kline disappeared.

On December 15, 1988 the tug and barge had travelled from Sewaren, New Jersey to Fall River, arriving in Fall River at 2:00 p.m.[1] Kline departed the vessel after finishing his watch duty at 6:00 p.m. and returned to the vessels at 11:00 p.m. Sometime between 11:30 p.m. and midnight, Kline went on duty again as watch officer on the tug. At 1:00 a.m., December 16, 1988, Kline went to the galley of the barge where the captain and others were

and remained there until 2:00 a.m. when he said he was going to urinate.

Kline did not return within the amount of time the captain thought necessary and a crew member was sent to look for him. After the crew member was unable to locate Kline the captain thought perhaps Kline had gone overboard and the general alarm was sounded. At the time Kline disappeared, he was twenty-eight years old, in good physical condition, and was a certified scuba diver.

A general rescue attempt was made by local authorities and the Coast Guard, but Kline was not found. The search continued through the morning and afternoon of December 16, 1988 to no avail. On May 9, 1989, Kline's body was recovered from the river and an autopsy was performed. When his body was recovered, Kline was not wearing a coat and the zipper of his pants was down. (Docket Item 39, Exhibit E, pp. 54–55).

Following Kline's disappearance, an officer reported to the barge/tug tandem and after an unsuccessful attempt at locating Kline, did an investigation. At deposition, the officer testified as to the contents of the report he filled out during this investigation (Docket Item 39, Exhibit C, pp. 48–52, 54) and about photographs of the ship's deck taken at approximately 6:00 a.m. the morning following Kline's disappearance. (Docket Item 39, Exhibit C, pp. 74–79). The officer testified the report and photographs show there were icy spots and no guardrail on the deck at approximately the position crew members and the captain had informed him was the usual spot for them to urinate off the side of the vessel.

The autopsy revealed nothing that would make the pathologist conclude that the decedent's death was caused by traumatic injury. Rather, the pathologist concluded that death was caused by drowning with exposure. (Docket Item 39, Exhibit A, Autopsy Report). During deposition, the pathologist indicated that the use of the word exposure, in his mind, is the equivalent of the term hypothermia, wherein the body temperature falls below 95 degrees Fahren-

---

1. All times referred to herein are approximates.

heit. (Docket Item 39, Exhibit E, p. 43). Further, the pathologist testified that exposure was more than a contributory cause of death and he believed the temperature of the water and air affected Kline's ability to survive. (Docket Item 39, Exhibit E, p. 33). A blood alcohol level of .21 was found to exist in the body at the time of the autopsy, however, the pathologist was unable to conclude how much of the alcohol level was exogenously or endogenously produced.[2]

It is on this factual background that the present motion for summary judgment must be decided.

## II. SUMMARY JUDGMENT MOTION

### A. SUMMARY JUDGMENT STANDARD

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). If there is no genuine issue as to any material fact then the moving party is entitled to judgment as a matter of law. *Id.* An issue is "genuine" only if the evidence is such that a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Substantive law identifies which facts are "material" and only disputes over facts that "might affect the outcome of the suit under the governing law" will defeat summary judgment. *Id.*

The moving party need not affirmatively refute the elements; rather, they need only show the insufficiency of proof of those elements. *Houser v. Fox Theatres Management Corp.*, 845 F.2d 1225 (3d Cir.1988). When the moving party has discharged their burden, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial*

*Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

Any doubts that exist as to the existence of genuine issues of material facts are to be resolved against the movant. *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 900 (3d Cir.), *cert. dismissed*, 483 U.S. 1052, 108 S.Ct. 26, 97 L.Ed.2d 815 (1987). Moreover, all inferences are to be viewed in light most favorable to the non-movant. *Id.*

The judge's function on summary judgment is merely to determine whether a genuine issue of fact for trial exists or whether the evidence is so one-sided that one party should prevail as a matter of law. *Liberty Lobby*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12. The judge should not weigh evidence or determine the truth of any matters in dispute. *Id.* at 252, 106 S.Ct. at 2512.

### B. DISCUSSION

#### 1. Causation

The defendants contend that summary judgment is appropriate in this case as the plaintiff's are unable to prove causation which is an essential element of their claim. (Docket Item 35, p. 7). In argument, the defendants state that proof of the employer's negligent acts or omissions as the proximate cause of the seaman's death is a critical element of a claim under the Jones Act, 46 U.S.C. § 688. (*Id.*) Thus, according to the defendants when the causal link between the act or omission and the death is too speculative to draw a reasonable inference, summary judgment is appropriate. (*Id.* (citations omitted)). Further, where there is no evidence of causation, summary judgment is warranted. (*Id.* (citations omitted)).

The burden on the plaintiff to prove causation in a Jones Act case is very light. *In re Cooper/T. Smith*, 929 F.2d 1073, 1076 (5th Cir.1991), *cert. denied*, ——

---

**2.** Alcohol levels that are determined to be from exogenous intake would be those that result from the consumption of alcohol. On the other hand, endogenously produced alcohol levels are those that result from the decomposition of the body from bacterial action. (Docket Item 39, Exhibit E, p. 31).

U.S. ——, 112 S.Ct. 190, 116 L.Ed.2d 151 (1991), *citing, Landry v. Two R. Drilling Co.*, 511 F.2d 138, 142 (5th Cir.1975). Moreover, under the Jones Act, a "jury is entitled to make permissible inferences from unexplained events," however, summary judgment is warranted where there is a complete absence of proof from the nonmoving party. *In re Cooper/T. Smith*, 929 F.2d at 1077, *citing, Martin v. John W. Stone Oil Distributor, Inc.*, 819 F.2d 547, 549 (5th Cir.1987).

The cases cited by the defendants on the issue of causation are factually distinguishable from the case presently before the Court. For instance, in *In re Cooper/T. Smith*, the Court stated that:

> The persons who searched the vessels and walked across the barges found no condition that would indicate that Ashbire might have slipped or fallen into the water ... The Coast Guard investigated the incident and reported that there was no evidence of culpability for the accident. Even now, no one knows what happened to Ashbire on the date he disappeared.

929 F.2d at 1076. Unlike that case, this Court finds there is a reasonable basis present for a jury to make an inference regarding causation.

The record currently before the Court shows testimony: (1) as to where the crew of the barge/tug tandem typically urinated over the side of the ship (Docket Item 35, Exhibit A, p. 43; Docket Item 35, Exhibit B, p. 52; Docket Item 39, Exhibit B, p. 43; Docket Item 39, Exhibit C, pp. 49–52, 66–67); (2) that Kline indicated he was going above board to urinate (Docket Item 35, Exhibit A, p. 43; Docket Item 39, Exhibit B, p. 43; Docket Item 40, Exhibit A, p. 102); (3) that there was ice accumulation at or near the site where the mates generally urinated (Docket Item 39, Exhibit C, pp. 54, 74–77, 79; Docket Item 39, Exhibit D, pp. 90–91); (4) that there was no railing at or near the site in question and that such railing is called for (Docket Item 39, Exhibit C. pp. 54, 77; Docket Item 39, Exhibit D, pp. 51–57, 101); (5) that pictures which accurately depicted Kline's body as it was found show the zipper on his pants was down (Docket Item 39; Exhibit E, pp. 54–55); and (6) that the captain would have had reason to know of the ice. (Docket Item 39, Exhibit D, p. 102; Docket Item 40, Exhibit A, p. 102). When the record is read most favorably for the non-movant, as must be done on a motion for summary judgment, the Court concludes there is sufficient basis for a jury to infer a causal relationship and thus, summary judgment must be denied.

No one conclusively testified that Kline went to a particular spot to urinate on the night he disappeared, nor did anyone testify they saw him urinating. Further, no one can definitively state that Kline slipped on ice and fell into the water. (Docket Item 39, Exhibit C, pp. 65, 67; Docket Item 40, Exhibit A, p. 102). However, the Court finds there is sufficient evidence to get beyond this motion for summary judgment.

### 2. The Seaworthiness Claim

■ The defendants next contend that summary judgment is appropriate on the seaworthiness claim as "a duty of seaworthiness extends only to a ship's crew or those who come aboard to do work traditionally performed by seaman." (Docket Item 35, p. 9); *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). In so arguing, the defendants claim that Kline was not a member of the ship's crew or the class of workmen to whom the duty would be extended. (Docket Item 35, p. 9).

The United States Supreme Court has stated that "the shipowner's duty to furnish a seaworthy ship is not a duty to furnish an accident-free ship; 'it is a duty only to furnish a vessel and appurtenances reasonably fit for their intended use.'" *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Thus, the defendants argue that the plaintiffs are not entitled to recover for two reasons. First, they claim that Kline is not a member of the protected class. Second, they claim that the plaintiffs are unable to provide evidence that Kline's injury and subsequent death was proximately caused

by an unseaworthy condition aboard the tug or barge. (Docket Item 35, p. 10) Thus, when the matter becomes pure speculation or conjecture there is insufficient evidence to submit the question to the jury. (*Id.*)

With respect to the defendants' first argument, the Court is unpersuaded in view of the recent United States Supreme Court decision in *McDermott Int'l., Inc. v. Wilander*, 498 U.S. ——, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991). There the Court held that to be classified as a seaman, a person need only "be employed on board a vessel in furtherance of its purpose" rather than have any purpose in aiding its navigation. *Wilander*, 111 S.Ct. at 813. In conclusion the Court stated:

The key to seaman status is employment-related connection to a vessel in navigation. We are not called upon here to define this connection in all details, but we hold that a necessary element of the connection is that a seaman perform the work of a vessel. In this regard, we believe the requirement that an employee's duties must "contribut[e] to the function of the vessel or to the accomplishment of its mission" captures well an important requirement of seaman status. It is not necessary that a seaman aid in navigation or contribute to the transportation of the vessel, but a seaman must be doing the ship's work.

*Id.* at 817 (citations omitted). "The inquiry into seaman status is of necessity fact-specific; it will depend on the nature of the vessel, and the employee's precise relation to it." *Id.* at 818. The Court concludes that Kline, in performing his duties as a mate aboard the tug, was a seaman with respect to the barge in light of the fact that the barge and tug were a tandem that had operated as such since their first journey.

■ The defendants next argue that summary judgment is appropriate as plaintiffs have wholly failed to provide any evidence that Kline's death was proximately caused by the unseaworthy condition

present.[3] In so arguing, the defendants cite several cases, none of which this Court finds controlling to the present factual scenario.

In *Chisholm v. Sabine Towing & Trans. Co.*, 679 F.2d 60 (5th Cir.1982) the Court of Appeals for the Fifth Circuit in reversing the conclusions reached from a bench trial, concluded that there was no evidence that the unseaworthy condition caused the plaintiff's injury. *Chisholm*, 679 F.2d 60, 62. In that case, there was substantial evidence as to the unseaworthy condition and the cause of the plaintiff's injury, the missing element was that the unseaworthy condition caused the plaintiff's injury. *Id.* Without shifting the burdens of proof in a claim of unseaworthiness, this Court cannot take the facts presented at trial in the above case and reasonably relate them to the case at bar.

Similarly, the defendant asks this Court to analogize *Chicago, Milwaukee & St. Paul Ry. Co. v. Coogan*, 271 U.S. 472, 46 S.Ct. 564, 70 L.Ed. 1041 (1926), and *Swords v. American Sealanes, Inc.*, 443 F.2d 1324 (4th Cir.1971), *cert. denied*, 404 U.S. 948, 92 S.Ct. 276, 30 L.Ed.2d 265 (1971) to the case presently before it. Each of those cases were decided after all of the evidence was presented at trial, neither was on a motion for summary judgment. Further, the Court finds that the facts that may be established in this case given the circumstantial evidence takes a possible conclusion by the factfinder out of the realm of speculation or conjecture as there appears sufficient basis for a reasonable person to conclude the causative link necessary.

This Court finds the evidence, when viewed in the light most favorable to the plaintiff, is sufficient to withstand summary judgment on this point. There is deposition testimony in the record that would permit a reasonable factfinder to find for the plaintiff on the issue of proximate cause. In so stating the Court notes there is testimony which would support a jury finding: (1) the men frequented the

---

**3.** There appears no argument in the defendants' opening or reply brief that an unseaworthy condition existed, therefore the Court will assume,

for purposes of this motion, that defendants concede this point.

same spot when urinating off the side of the vessel; (2) there was ice at or near the spot; (3) the guardrail was known to be down at approximately that spot; (4) the last time Kline was seen he had gone on-deck to urinate; (5) Kline, while urinating, slipped on the ice on the deck and fell to his death. From this the Court believes that a reasonable jury could conclude that the un-seaworthy conditions of the ship (the ice and the missing guardrail) were the proximate cause of Kline's death.

The Court finds this case to be most like that presented in *Schulz v. Pennsylvania R. Co.*, 350 U.S. 523, 76 S.Ct. 608, 100 L.Ed. 668 (1956), where the Court concluded that the issues should not be taken from a jury merely because there was no direct evidence of exactly how the death occurred. In so deciding, the Court stated:

> Fair-minded men could certainly find from the foregoing facts that defendant was negligent in requiring Schulz to work on these dark, icy and under-manned boats. And reasonable men could also find from the discovery of Schulz's half-robed body with a flashlight gripped in his hand that he slipped from an unlighted tug as he groped about in the darkness attempting to perform his duties. But the courts below took this case from the jury because of a possibility that Schulz might have fallen on a particular spot where there happened to be no ice, or that he might have fallen from the one boat that was partially illuminated by shore lights. Doubtless the jury could have so found (had the court allowed it to perform its function) but it would not have been compelled to draw such inferences. For "The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable." Fact finding does not require mathematical certainty. Jurors are supposed to reach their conclusions on the basis of common sense, common understanding and fair beliefs, grounded on evidence consisting of direct statements by wit-

nesses or proof of circumstances from which inferences can fairly be drawn. *Schulz*, 350 U.S. at 526, 76 S.Ct. at 610.

Further, the Court is persuaded by the language in *Lavender v. Kurn*, 327 U.S. 645, 66 S.Ct. 740, 90 L.Ed. 916 (1946) wherein the United States Supreme Court stated that the trier of fact is allowed "a measure of speculation and conjecture ... to settle the dispute by choosing ... the most reasonable inference." *Lavender*, 327 U.S. at 653, 66 S.Ct. at 744. To hold otherwise would undoubtedly require trial court's to grant summary judgment in every case where a person is found dead following unwitnessed and unexplained events, this the Court will not do. Where there is sufficient evidence for a reasonable trier of fact to infer some causal connection, it is for the trier of fact to so decide, not for the Court to withhold that important function.

### 3. The Claims for Damages

Finally, the defendants claim that summary judgment is appropriate as the plaintiff is unable to prove, as required, any right to damages in this action. First, the defendants claim that the United States Supreme Court in *Miles v. Apex Marine Corp.*, — U.S. —, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990) had determined that the estate of a deceased seaman is not entitled to compensation for loss of society under either the Jones Act or general maritime law. (Docket Item 35, p. 12). Further, the Court in *Miles* concluded that under the Jones Act or under general maritime law, damages for lost future earnings are not recoverable. (Docket Item 35, p. 13).

The Court finds no argument opposing the defendants' view in the plaintiffs' papers nor does the Court find that any such argument is available. Thus, as directed by *Miles*, the Court finds the plaintiffs' are unable to recover damages for loss of society or for future earnings. On these damage issues therefore, summary judgment is granted in favor of the defendants.

■ The next argument advanced by defendants is that they are entitled to summary judgment on the question of loss of support resulting from the plaintiffs' son's death. For the parents of a deceased seaman to recover for loss of support they must prove they were financially dependent on the decedent. *Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1350 (9th Cir.1987), *cert. denied*, 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989). In the absence of any supporting evidence, there can be no award for loss of financial support. *Id.* The Court finds that the defendants have not advanced such proof as to call into question the possibility of recovery with respect to loss of support. Although the defendants indicate that the plaintiffs' concede they were not financially dependent on their son in answers to two interrogatories, there is nothing in the record to allow the Court to make this conclusion.[4] Therefore, the Court concludes that there remains a material issue of fact that is not to be resolved on a motion for summary judgment.

Finally, defendants contend that the plaintiffs have failed to put forth proof of pain and suffering sufficient to go to trial. The defendants accurately set forth the following standard for permitting recovery for pain and suffering under the Jones Act or general maritime law:

[T]here must be evidence "from which the jury reasonably could find that while [the decedent] lived he endured conscious pain and suffering as a result of his injuries." *St. Louis, I.M. & S.R. v. Craft*, 237 U.S. 648, 655 [35 S.Ct. 704, 705, 59 L.Ed. 1160] (1914). "The plaintiff has the burden of proving the existence of conscious pain and suffering and a mere allegation that the decedent lived and suffered is insufficient where the only record supports a finding of almost instantaneous death." *Magee v. Rose*, Del.Super., 405 A.2d 143, 146 (Del.Super.1979). Recovery for pain and suffering is denied where the decedent's consciousness prior to death is merely con-

jectural. *Gardner v. National Bulk Carriers, Inc.*, 221 F.Supp. 243 (E.D.Va. 1963), *aff'd*, 333 F.2d 676 (4th Cir.1964); *Neal v. Barisich*, 707 F.Supp. 862, 865 (E.D.La.), *aff'd*, 889 F.2d 273 (5th Cir. 1989).

(Docket Item 35, p. 15). While the Court agrees with the standard set forth by the defendants pertaining to a plaintiffs ability to recover damages for pain and suffering, the Court cannot agree with the defendants' conclusion that, in this case, summary judgment is called for because any recovery would be mere conjecture.

■ From all of the cases cited by either party and those the Court located independently, it is clear that there must be some record support for the fact that actual conscious pain and suffering was present for recovery to be available. Only one case has spoken to a situation similar to the one presently before the Court. In *Cook v. Ross Island Sand and Gravel Co.*, 626 F.2d 746 (9th Cir.1980), there was an eyewitness account of the fall itself, however no one could testify as to the decedent's consciousness after entry into the water. In that case, the Court stated:

As indicated above, in order for a decedent's beneficiaries to recover damages for a decedent's pain and suffering, it is necessary to establish that the decedent was conscious for at least some period of time after he suffered the injuries which resulted in his death. Defendant argues that there was not sufficient evidence presented at trial to establish that the decedent Dennis Cook was conscious either during his fall from the tug and barge, or after he had entered the Columbia River. We disagree.

.    .    .    .    .

[W]hen we examine the evidence in the light most favorable to plaintiff, as we are required to do, we conclude that there was substantial evidence presented at trial to enable the jury to find that the decedent had been conscious for at least

---

**4.** The defendants' brief indicates how the plaintiffs' responded to two interrogatories, however, the answers to interrogatories were not submitted to the Court and, thus, have not been made part of the record.

some period of time after he had entered the Columbia River. For example, Dr. Larry Newman, plaintiff's medical expert, testified that the autopsy of the decedent's body had not produced any evidence that the decedent had sustained a skull fracture. Based on the absence of such evidence, Dr. Newman concluded that the decedent had remained conscious for up to two and one-half minutes after he had become submerged in the water.

. . . . .

[W]e find that the evidence of a lack of skull fracture in the present case is comparable to the evidence of a "soft" collision in the *United States Steel Corp.* case. The testimony that the decedent Dennis Cook had not suffered a skull fracture enabled the jury to draw the inference that the decedent had been conscious during the asphyxiation. This inference shifted the burden of proof to defendant; however, defendant failed to come forward with any evidence in rebuttal. Accordingly, we now conclude that the testimony of Dr. Newman provided substantial evidence on which the jury could properly base a finding that the decedent had been conscious during the time that he was submerged in the water of the Columbia River. *Accord, Southern Pacific Co. v. Heavingham*, 236 F.2d 406, 409 (9th Cir.1956) ("[I]f the jury were of the view that [the decedent] probably suffocated from the steam, they would have the right to conclude that a man whose breath has been cut off nevertheless would remain conscious for an appreciable period of time.").

*Cook*, 626 F.2d 746, 749–750. Like that case, The autopsy of Kline and testimony from the pathologist indicates there was no evidence of a skull fracture from the fall.

Thus, the Court finds that a jury could reasonably infer that upon entry into the water, for some period of time, Kline experienced some pain and suffering.[5]

Further, like the Court in *Deal v. A.P. Bell Fish Co.*, 728 F.2d 717 (5th Cir.1984), the Court finds that while this may be a case that "lies at the edge" it would be improper at this juncture to take the decision away from the trier of fact. In *Deal* the Court stated:

> [T]he pain and suffering of a drowning seaman is a compensable injury in a wrongful death action under the Jones Act. Although eyewitness evidence is not necessary, there must be evidence supporting a finding that the decedent was conscious when drowned. There is dicta in *Davis v. Parkhill–Goodloe Co.* suggesting that evidence supporting consciousness must be "substantial", but a more accurate statement of the rule is that there must be evidence to support a reasonable inference of consciousness. While this case lies at the edge, given the strong policy of reading the compensatory scheme in a manner favorable to seamen we are persuaded that the issue ought to go to the jury.

*Deal*, 728 F.2d at 718–719 (Citations omitted).

Also, in *United States Steel Corp. v. Lamp*, 436 F.2d 1256 (6th Cir.1970) the Court found that there was sufficient evidence to award pain and suffering damages when the decedents were last seen performing their duties during which time the ship was taking on water. In so deciding, the Court stated:

> An eyewitness account of the circumstances of the deaths is not essential to such an award. Such evidence does, however, establish that some of the dece-

---

5. Further, there was testimony produced that indicated the time frame that Kline could have survived under the conditions present and given his physical attributes. Dr. Robert Pozos testified that Kline could have remained conscious and floating for 25 minutes whether or not he had a jacket on. (Docket Item 39, Exhibit F, p. 49). Further, Dr. Pozos testified that Kline could have swam for fifteen minutes, remaining conscious during that time. (Docket Item 39,

Exhibit F. p. 50). Further, Dr. Barry Maletsky testified that Kline could have remained conscious for a period of 20 to 30 minutes. (Docket Item 39, Exhibit G, pp. 92–95). Without weighing the evidence, as a Court is instructed not to do on a motion for summary judgment, the Court finds this sufficiently explicit to remove an award of damages from pure speculation or conjecture. *Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

dents were last observed performing their assigned duties below deck after the collision ... During this period of time the Cedarville was rapidly taking on water despite the efforts of the crew to halt it, thus permitting the inference that these decedents met their deaths by drowning in those inrushing waters while engaging in an unsuccessful struggle to save the ship. Moreover, it must be remembered that the survivors described the impact ... as relatively "soft", thus permitting the further inference that it was unlikely that any of the decedents would have been rendered unconscious prior to their final moments ... Under such circumstances, an award for pain and suffering cannot be said to be error.

*United States Steel,* 436 F.2d at 1275–1276 (Citations omitted).

6. The Court is aware that the pathologist is unable to definitively state whether or not Kline was conscious upon entering the water. This, however, still permits a reasonable inference, when all the evidence is considered in the light most favorable to the non-movant, that Kline was conscious when he entered the water. The pathologist testified as follows concerning Kline's consciousness following entry into the water:

A. My autopsy report does not reveal anything that would tell me that Mr. Kline was unconscious at the time he went into the water.
Q. Nor does it tell you that he was conscious, correct?
A. There isn't any evidence of that. If you want, I will refer to my examination of the head that I had at this point.

. . . . .

A. Now, not always, but when someone has a concussion, there's some evidence of a blunt force impact such as hemorrhage covering the brain itself or maybe a skull fracture or maybe blood on either side of the dura or actually a color change in the brain itself, a bruise or a purple contusion. And I don't see that. So there is nothing in my report to suggest that he was unconscious. Is it possible? Yes. Is it probable? I prefer not to answer that question. That's a little bit more—
Q. You can't say for sure?
A. I can't say for sure, but it's my—I apologize; why don't we stop at that point, okay?
(Docket Item 35, Exhibit D, pp. 45, 47; Docket Item 39, Exhibit E, pp. 46, 48–49):
Q. Dr. Zane, nothing in your official autopsy report would suggest that Mr. Kline entered the water unconscious; is that correct?

Thus, the Court finds that so long as a permissible inference may be made drawn from the circumstances as a whole that a person was not rendered unconscious by the experience, it is up to the trier of fact to determine the appropriateness of an award for pain and suffering. In this case, the Court finds persuasive the fact that the autopsy did not reveal any pre-mortem traumatic injury to Kline and, thus, a reasonable inference may be drawn that Kline was conscious upon entering the water.[6] In further support of this conclusion is that the pathologist indicated that the statement that Kline died from "drowning and exposure" inferred that Kline was conscious upon entering the water. Had Kline been unconscious the pathologist testified that he would have expected the cause of death to have been drowning, without reference to exposure.[7]

A. That is correct.

. . . .

Q. And the autopsy report you performed analyzed the brain with care so as to determine whether some evidence might be present which could suggest an injury to the brain prior to entering the water?
A. That is correct.
Q. And your report indicates that there wasn't such evidence?
A. That's correct.
Q. From that, is there not a reasonable inference that there is no basis in the autopsy report to suggest that Mr. Kline entered the water other than in a conscious state?
A. That is correct.
(Docket Item 35, Exhibit D, pp. 49–51).

7. However, it should be noted that the pathologist also testified that it is not possible solely by viewing the gross anatomical results to conclude that a person experience hypothermia or exposure. Rather, the pathologist must rely on the circumstances present when the person expired. As a result, the following testimony was offered:

Q. [D]uring the course of your autopsy, were you able to find any indication that Mr. Kline had experience hypothermia?

. . . . .

A. There are two parts to the answer. The first part, in performing the post-mortem examination and in viewing the gross anatomical results, no. Taking into consideration the story prior to the examination and during the examination that Mr. Kline went into the water during December of 1988, I have to include that in my cause of cause of death; it has to be taken into consideration. Grossly, no, but gross findings plus circumstances, yes.

The Court is not unacquainted with cases concerning recovery of pain and suffering damages that take an opposite view. However, from those opinions, there is no indication that there was evidence to support a finding that no pre-mortem trauma was present as in *Cook* and the case at bar.

In *In re Dearborn Marine Service, Inc.,* 499 F.2d 263 (5th Cir.1974), the Court, in reversing an award for pain and suffering damages, concluded:

> The immediacy of the occurrence and the absence of other evidence make too speculative the finding that Monk survived for a matter of minutes and made his way to the forepeak.

*In re Dearborn Marine Service,* 499 F.2d at 288. In that case, however, there was an explosion on the vessel and the only evidence submitted was where the decedent was prior to the explosion and where the body laid to rest following the explosion. There was no evidence available for a finder of fact to conclude that any conscious pain and suffering was present.

Likewise, in *In re Sincere Navigation Corp.,* 329 F.Supp. 652 (E.D.La.1971), the Court concluded that pain and suffering damages would not be recoverable because any award would be purely conjectural. Again, that case is dissimilar to the case currently before the Court. In that case, there was a collision and many of the bodies were never recovered. In response to the evidence presented, the Court said:

> Evidence was presented that, in the usual case of death by drowning, the decedent is conscious of impending death and likely experiences some suffering for a period perhaps as long as two minutes prior to his loss of consciousness. This conclusion was drawn by a medical expert largely from the early onset of rigor mortis after death by drowning and the likelihood that this indicates strenuous muscular activity immediately prior to death.

. . . . .

> No one can know that any man who perished ... suffered a moment. Some were likely asleep at the moment of the collision. Others, awake, may have lost consciousness in a minute or less. No bodies were recovered from which any signs could be sought. The court is urged to conclude that all those whose bodies were not recovered died by drowning, that all were conscious for a period of time after the instant of impact, and that all suffered severe pain. The theory is plausible but it can hardly be said to be supported by a preponderance of the evidence. Under the circumstances of this case, the claim for damages for pain and suffering prior to death must be considered conjectural as to any particular decedent.

*In re Sincere Navigation Corp.,* 329 F.Supp. at 658–659 (Citations omitted). Clearly, the case at bar differs from the circumstances presented to the Court in *Sincere Navigation.* Most notably, for purposes of this summary judgment motion, the Court in *Sincere Navigation* was faced with a collision at a time when it was not known if the people involved were asleep or awake at the time of the incident. Further, the Court did not have the benefit of the autopsy reports on those persons who perished as a result of the collision. Again, the case at bar is considerably different. There is no doubt Kline was awake and alert minutes before the mishap and there is no evidence he suffered an injury that would render him unconscious, thus, the Court finds the circumstances presently before it more in line with permitting the finder of fact to determine whether there is

Q. So you didn't find any evidence, for example, of cardiac arrest resulting from hypothermia?
A. That is correct.
Q. Just so I understand what you mean by exposure an hypothermia, let me ask you this. If Mr. Kline was unconscious when he went into the wafer and did not recover consciousness before he expired, in your opinion would he have experienced exposure and/or hypothermia?
A. In my mind, that's a hypothetical. If he lost consciousness, went into the water, then he would not necessarily have died with exposure and drowning. It would just be drowning.

(Docket Item 35, Exhibit D, pp. 45, 47; Docket Item 39, Exhibit E, pp. 46, 48–49).

sufficient evidence of conscious pain and suffering to permit an award of damages.

Moreover, in *Shatkin v. McDonnell Douglas Corp.*, 727 F.2d 202 (2nd Cir.1984), the Court denied recovery of pain and suffering damages finding that any award would be too speculative as there was no evidence produced that would permit a permissible inference of pain and suffering. In so deciding, however, the Court stated the following:

Assuming that pre-impact pain and suffering is compensable, it must first be shown by a preponderance of the evidence that the decedent had some knowledge or other basis for anticipating the impending disaster; otherwise no basis would exist for a finding of fright or mental anguish. In granting summary judgment dismissing a similar claim, the Court in *Anderson v. Rowe*, 73 A.D.2d 1030, 425 N.Y.S.2d 180 (4th Dept.1980), recognized this elementary proposition: "The plaintiff was not able to present any evidence that they suffered any conscious pain. Nor was the plaintiff able to show evidence from which one might imply that the decedents were aware of the danger and suffered from pre-impact terror."

Similarly, in *Feldman v. Allegheny Airlines, Inc.*, 382 F.Supp. 1271 (D.Conn. 1974), *aff'd in relevant part*, 524 F.2d 384 (2d Cir.1975), even though there was evidence suggesting that some passengers anticipated the plane crash that killed the decedent, the court dismissed the claim for pre-impact conscious pain and suffering, stating:

"Nor was any evidence presented from which the Court could fairly infer that the decedent was aware of the proximity of disaster in advance of the actual impact ...

"Based on the proof adduced specifically on this point and on the totality of the circumstances of this case, the Court concludes that it would be too speculative to award damages for ... conscious pain and suffering and contemplation of death." *Feldman*, 382 F.Supp. at 1300–1301.

Eyewitness testimony to the decedent's pain and suffering is not essential to recovery; indeed, in most cases of the present type it would be difficult if not impossible to obtain. But at least some circumstantial evidence must be adduced from which it can reasonably be inferred that the passenger underwent some suffering before the impact.

*Shatkin*, 727 F.2d at 206–207 (Citations omitted).

Finally, in *Davis v. Parkhill–Goodloe Co., Inc.*, 302 F.2d 489 (5th Cir.1962) the decedent was last seen alive walking toward shore and the following day his body was found floating in the water. 302 F.2d at 491. The Court referred to the autopsy report insofar as it stated the cause of death was drowning, however, there was no indication in the opinion as to whether any pre-mortem injury was detectable. The Court, in conclusion, stated:

[W]hile the evidence in this record is sufficient to warrant a finding favorable to the plaintiffs by the trier of fact on causation and damages, we do not express any opinion as to what the decision on either one or both of those points should be. For like reasons, we think the Court, on the basis of the actual evidence submitted on that retrial, must determine whether it is sufficient to raise the question of conscious pain and suffering. Great ingenuity was exercised in putting forward a medical theory based upon expert testimony of the probable length of time it took for a person finally to expire in drowning. But there are so many unknowns in this unexplained slipping or falling of Davis into the water, that we should only say that substantial evidence will be required to sustain a finding of consciousness upon which to rest the permissible assumption of pain.

*Davis*, 302 F.2d at 495.

The Court finds that when the totality of circumstances are considered, there is sufficient testimony to permit the question of conscious pain and suffering damages to go to the jury. There is testimony that indicates Kline did not experience a premortem injury that would render him un-

conscious and there is testimony delineating the time a person of Kline's physical stature could be expected to survive and remain conscious under the conditions. Therefore, the Court concludes that defendants' motion for summary judgment on the issue of damages for pain and suffering must be denied.

## III.   CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment will be granted insofar as it requests summary adjudication with respect to damages for loss of society and loss of future earnings. However, the defendants' motion for summary judgment will be denied as it relates to causation and other damage issues.

## OPINION ON MOTION FOR LIMITED REARGUMENT

On April 13, 1992 the Court issued an opinion and order granting in part and denying in part defendants' motion for summary judgment.   On April 15, 1992 defendants moved for limited reargument pursuant to local rule 3.3 and Federal Rule of Civil Procedure 59(e).   The plaintiffs responded on April 28, 1992 and this motion is now ready for decision.   For the reasons stated herein, the defendants' motion for limited reargument is granted and summary judgment on the issue of damages for loss of support is granted.

## I.   MOTION FOR RECONSIDERATION

The Court refers the parties to the April 13, 1992 opinion for the relevant factual background.

## A.   STANDARD APPLIED ON A MOTION FOR RECONSIDERATION

Although a motion for reconsideration is not explicitly provided for by the Federal Rules of Civil Procedure, it is not uncommon.   *Karr v. Castle,* 768 F.Supp. 1087, 1090 (D.Del.1991).   In deciding whether reargument is appropriate, this Court has stated:

> In no event should reargument be granted where the matters advanced for reargument would not "reasonably have al-

tered the result [previously] reached by the Court...."   Reargument should not be granted where it would merely "allow wasteful repetition of arguments already briefed, considered and decided."   Furthermore the reargument mechanism afforded by Local Rule 3.3 should not be used as a means to argue new facts or issues that inexcusably were not presented to the court in the matter previously decided.   Finally, reargument and reconsideration requests "are not a substitute for an appeal from a final judgment."

.     .     .     .     .

> Thus, Local Rule 3.3 attempts to balance the interests in obtaining a final decision on matters presented to the Court and the recognition that the Court, like all others, is capable of mistake and oversight.

*Brambles USA, Inc. v. Blocker,* 735 F.Supp. 1239, 1240–1241 (D.Del.1990) (citations omitted).   Here, reargument is requested as the defendants failed to include an interrogatory response as part of the record and thus, it was not considered in rendering the original decision.   The response is now submitted by the defendants along with their request for reargument.

The Court, in the April 13, 1992 opinion, refused to grant summary judgment on the issue of damages for loss of support because, as stated in that opinion:

> The Court finds that the defendants have not advanced such proof as to call into question the possibility of recovery with respect to loss of support.   Although the defendants indicate that the plaintiffs' conceded they were not financially dependent on their son in answers to two interrogatories, there is nothing in the record to allow the Court to make this conclusion.   Therefore, the Court concludes that there remains a material issue of fact that is not to be resolved on a motion for summary judgment.

Opinion of April 13, 1992 at 462.   Further, in a footnote, the Court stated:

> The defendants' brief indicates how the plaintiffs responded to two interrogatories, however, the answers to [the] inter-

rogatories were not submitted to the Court and, thus, have not been made part of the record.

*Id.*

The defendants now attach the answer to one of the interrogatories and seek reargument on the motion for summary judgment with respect to loss of support damages.[1] (Docket Item 44). The plaintiffs claim that although their response indicated they were not financially dependent on their son it also stated they were recipients of substantial assistance with respect to the purchase of a second home. (Docket Item 45).

The defendants contend that absent financial dependence, no recovery for loss of support is available to the parents under the Jones Act or general maritime law.[2] According to defendants, any award, absent financial dependence would be pure conjecture and, thus, prohibited. The plaintiffs take an opposing position and state there is no evidence that the "plaintiffs did not consider their son's financial commitment to them ... as part of their normal living expenses."

1. As submitted, interrogatory 33 reads:

> 33. State whether you contend that Harry O. Kline, Jr. and Joan C. Kline were financial [sic] dependent on Kline at any time prior to his death.
> A: Plaintiffs were not financially dependent on their son. However, Plaintiffs were the beneficiaries of their son's benevolence in the sense that he initiated and substantially contributed to the purchase of a second home for himself and his parents.

(Docket Item 44, Exhibit A).

2. The Court wishes to address paragraphs three and four of the defendants' motion for reargument wherein the defendants cite a portion of the Court's opinion which states "defendants have not advanced such proof as to call into question the possibility of recovery with respect to loss of support" and then state the plaintiffs' have the burden of proving a genuine issue of material fact exists. (Docket Item 44, ¶¶ 3, 4). It is true that after a properly supported motion for summary judgment has been proffered the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (*quoting* Fed.R.Civ.P. 56(e)). However, in this

After reviewing the record and case law on this issue the Court concludes there exists no genuine issue of material fact with respect to a claim for loss of support. Consistently, Courts interpreting the Jones Act, Death on the High Seas Act ("DOHSA") and general maritime law have required a showing of dependency in order to recover for loss of support.[3] *Sea–Land Services, Inc. v. Gaudet,* 414 U.S. 573, 584–585, 94 S.Ct. 806, 814–815, 39 L.Ed.2d 9 (1974) (applying DOHSA); *Bergen v. F/V St Patrick,* 816 F.2d 1345, 1350 (9th Cir. 1987) (applying DOHSA); *Cook v. Ross Island Sand and Gravel Co.,* 626 F.2d 746, 748 fn. 4 (9th Cir.1980) (applying the Jones Act); *Rollins, v. Peterson Builders, Inc.,* 761 F.Supp. 918, 922 (D.R.I.1991) (applying the Jones Act and general maritime law); *Neal v. Barisich, Inc.,* 707 F.Supp. 862, 868–869 (E.D.La.), *aff'd,* 889 F.2d 273 (5th Cir.1989) (applying general maritime law). Further, the United States Supreme Court recently stated:

> Recovery of lost future income in a survival suit will, in many instances, be duplicative of recovery by dependents for loss of support in a wrongful death ac-

case the motion for summary judgment on the issue of loss of support damages was not properly supported and thus, the burden never shifted onto the plaintiffs on this issue. Rule 56(e) of the Federal Rules of Civil Procedure makes clear that the initial burden is on the movant to provide the Court with some basis for rendering judgment on the issue. ("When a motion for summary judgment is made *and supported* as provided in this rule ..." Fed.R.Civ.Pro. 56(e) (emphasis supplied)). To say the non-movant has the burden of showing a genuine issue of fact exists prior to any record support to the contrary being provided by the movant would require the non-moving party, in every case, to develop a record regarding the existence of every material fact based solely on the allegation of the other party that none exists. The Court maintained the tenor of the rule in stating that the defendants had failed to provide any support for their position.

3. Recently, the United State Supreme Court indicated the intent for recovery under DOHSA, the Jones Act or general maritime law be uniform in nature. *Miles v. Apex Marine Corp.,* —— U.S. ——, 111 S.Ct. 317, 326, 112 L.Ed.2d 275 (1990) ("Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law").

tion; The support dependents lose as a result of a seaman's death would have come from the seaman's future earnings. Perhaps for this reason, there is little legislative support for such recovery in survival.

*Miles v. Apex Marine Corp.*, —— U.S. ——, 111 S.Ct. 317, 326, 112 L.Ed.2d 275 (1990). Thus, the Supreme Court supported lower court decisions which require a showing of dependency for the plaintiff to recover for loss of support. Although Courts have made it clear that complete financial dependence is not required, it has consistently been held that there must be a reasonable expectation of future support for recovery.[4]

On motion for reargument the defendants supply the Court with the plaintiffs' statement that they were not financially dependent on their son. (Docket Item 44, Exhibit A). Thus, recovery would be possible only if there are reasonable grounds for the plaintiffs to have expected future pecuniary support from their son, had he lived.

As must be done on a motion for summary judgment, the record is viewed in the light most favorable to the non-movant. The answer to the interrogatory states that "[P]laintiffs were the beneficiaries of their son's benevolence in the sense that he initiated and substantially contributed to the purchase of a second home for himself and his parents." The Court finds that no reasonable expectation of future financial benefit can be inferred from the record.[5]

The only conclusion that can be drawn, based on the record, is that the decedent and his parents purchased a second home together. This however, does not permit the Court to infer that there exists a reasonable expectation of future financial benefit to the parents had the decedent survived. The purchase of the second home being the only financial contribution made by the decedent, on behalf of both himself and his parents, does not provide any grounds for finding that future financial contributions were likely or, if damages were to be awarded, would be based on anything but pure conjecture. Thus, the Court concludes that plaintiffs are not entitled to recovery for loss of support and summary judgment is appropriate.

## II.  CONCLUSION

For the reasons stated herein, the motion for reargument is granted and summary judgment with respect to loss of support damages is granted. An appropriate order will be entered.

---

**4.** *Bergen,* 816 F.2d at 1350. ("Recovery under DOHSA for loss of support "includes all the financial contributions that the decedent would have made to his dependents had he lived." *Gaudet.* Therefore, as the trial court recognized, recovery for loss of support requires some showing of dependence on the deceased or an expectation of support."); *Neal,* 707 F.Supp. at 868–869 (General maritime law and the Jones Act permit recovery for loss of support. "An award for damages, however, cannot stand when the only evidence to support it is speculative or purely conjectural."); *Cook,* 626 F.2d at 748 fn. 4 ("The loss of a decedent's support includes all the financial contributions that the decedent would have made to his dependents had he lived."); *Thompson v. Camp,* 163 F.2d 396, 403–403 (6th Cir.1947), *cert. denied* 333 U.S. 831, 68 S.Ct. 458, 92 L.Ed. 1116

(1948) ("To recover for loss of support under general maritime law the Courts have stated that the plaintiffs must show any reasonable ground for expecting any pecuniary benefit from a continuance of the decedent's life."); *Rollins,* 761 F.Supp. at 922 (If the decedent had made "financial contributions to her parents, or her parents expected such contributions in the future, those contributions would have controlled the amount of damages for loss of support the [parents] could have received under the Jones Act and General Maritime law.").

**5.** The plaintiffs did not submit any record support for their position and rely on the answer to the interrogatory in arguing that financial reliance exists. (*See* Docket Item 45 ¶ 7).