**In the Matter of the Complaint of DFDS SEAWAYS (BAHAMAS) LTD. and Scandinavian World Cruises (Bahamas) Ltd., Inc., as Owner and Operator of the M/V Scandinavian Sun for exoneration from or limitation of Liability.**

No. 85 Civ. 498 (LBS).

United States District Court,
S.D. New York.

Oct. 21, 1987.

As Amended Dec. 4, 1987.

Freehill, Hogan & Mahar, New York City, for petitioners; Patrick J. Bonner, of counsel.

Hoadley & Gavigan, P.A., Thomas A. Hoadley, West Palm Beach, Fla., for respondent Doris Lavoie Hettiger.

James, Zimmerman & Paul, Harlan L. Paul, DeLand, Fla., for respondent Harold S. Lavoie.

## OPINION

SAND, District Judge.

In this admiralty limitation proceeding, two of the claimants, Doris Hettiger and Harold Lavoie, are the mother and father of Colleen Skantar, a passenger who died in a fire on board the *M/V Scandinavian Sun* while it was docked in Fort Lauderdale, Florida. At the time of her death in August 1984, the decedent was married.

Doris Hettiger has asserted claims which, in essence, seek damages for the loss of her daughter's services. Decedent had provided her mother with free labor in her mother's butcher shop for some period of time, up until February or March 1984 when Ms. Hettiger sold the butcher shop. Ms. Hettiger repurchased the butcher shop in 1987. Harold Lavoie seeks recovery for losses best characterized as loss of his daughter's society and emotional damages. The defendant shipowner here moves to dismiss the claims of both parents.

The issues presented on the motion are whether these damage claims lie under the general maritime law as supplemented by either the Florida Wrongful Death Act (Fla.Stat. § 768.16 *et seq.*) or the Death on the High Seas Act (46 U.S.C. § 761 *et seq.*),

and if these laws differ in this regard, which law governs these claims. We note at the outset that under both of these statutes to which the general maritime law might look for a schedule of beneficiaries, the parents of a decedent may bring wrongful death claims provided they have suffered cognizable damages.

## DISCUSSION

In the past, cases involving deaths in state territorial waters were adjudicated under state wrongful death statutes. *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 393, 90 S.Ct. 1772, 1783, 26 L.Ed.2d 339 (1970). The Death on the High Seas Act (46 U.S.C. § 761 *et seq.* [hereinafter "DOHSA"]) was enacted in 1920 to provide a remedy for the survivors of persons killed on the high seas, who had previously had no recourse under American law. *Id.* at 398, 90 S.Ct. at 1786. It explicitly refrained from pre-empting state law as to wrongful death occurring in territorial waters, applying by its terms only to the seas beyond the three-mile zone. DOHSA, 46 U.S.C. § 761; *see also Moragne, supra,* 398 U.S. at 398, 90 S.Ct. at 1786.

Fifty years later, in order to increase the uniformity and predictability of admiralty law, the Supreme Court established a new cause of action for wrongful death as part of the general maritime law. *Moragne, supra,* 398 U.S. at 401–02, 90 S.Ct. at 1788. The details of effectuating the new common law remedy were to be left to the "sifting" process of the lower courts. *Id.* at 406–08, 90 S.Ct. at 1790–91. Among the details not decided was the schedule of beneficiaries entitled to recover under the new cause of action. *Id.* at 408, 90 S.Ct. at 1791.

It is well settled that federal maritime law is to be applied to the exclusion of *conflicting* state law even in state courts. 2 Am.Jur.2d, Admiralty, § 7 at 723, § 92 at 773. In the past, the creation in *Moragne* of a general maritime cause of action for wrongful death had been held to "preclude[ ] recognition in admiralty of state statutes." *Matter of S/S Helena*, 529 F.2d 744, 753 (5th Cir.1976), *later app.* 547 F.2d 255 (1977), *cert. denied sub nom. Heinrich Schmidt Reederei v. Byrd,* 467 U.S. 1252, 104 S.Ct. 3537, 82 L.Ed.2d 842 (1984), and *cert. denied sub nom. St. Paul Fire & Marine Ins. Co. v. Culver,* 469 U.S. 819, 105 S.Ct. 90, 83 L.Ed.2d 37 (1984); *see also Nelson v. United States,* 639 F.2d 469, 473 (9th Cir.1980). A recent Supreme Court decision, however, has made clear that when federal maritime law has not specifically provided for a given situation, state law can be used to "supplement" the federal law.

In *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986), the Supreme Court implicitly overruled lower court decisions holding that state law cannot be used to supplement the general maritime law. There the Court ruled that state law cannot be used to supplement DOHSA with respect to wrongful deaths *on the high seas.* It ruled that DOHSA's savings clause (46 U.S.C. § 767) was intended only as a jurisdictional savings clause as to the high seas but as *both* a jurisdictional and substantive savings clause as to territorial waters (*id.,* 106 S.Ct. at 2496–97), and it reaffirmed the *Higginbotham* ruling that "when DOHSA does speak directly to a question, the courts are not free to supplement Congress' answer so thoroughly that the Act becomes meaningless" (*id.* at 2500, quotations omitted). Thus, under DOHSA's savings clause, state courts can apply their own law as to territorial waters as long as state law does not conflict with federal law. A federal court can enforce a right created by state law as long as the subject matter is properly in the federal tribunal (2 Am. Jur.2d, Admiralty, § 7 at 724–25, § 92 at 773–74).

Although the sources of law most prominently discussed as potential guides in developing the schedule of beneficiaries were federal (see below), the *Moragne* Court did not rule out the possibility of "borrow[ing] from the law of the relevant coastal State." *Moragne, supra,* 398 U.S. at 408, 90 S.Ct. at 1791. We must thus consider what the result would be both under Florida's wrongful death statute and under the most relevant federal statute.

## FLORIDA WRONGFUL DEATH ACT

The Florida Wrongful Death Act defines the "survivors" who can benefit under the Act as "the decedent's spouse, minor children, parents, and when partly or wholly dependent on the decedent for support or services, any blood relatives and adoptive brothers and sisters." (Fla.Stat. § 768.18(1) (1986)). It defines "support" as "including contributions in kind as well as money." (§ 768.18(3)). It states that " 'services' means tasks, usually of a household nature, regularly performed by the decedent, that will be a necessary expense to the survivors of the decedent. These services may vary according to the identity of the decedent and survivor, and shall be determined under the particular facts of each case." (§ 768.18(4)).

■ Only "dependent" parents and parents of minor children are potential "survivors" for purposes of the act. *See Vildibill v. Johnson*, 492 So.2d 1047, 1050 (Fla. 1986). The parents of an adult child cannot recover under this statute for mental pain and suffering. *Bassett v. Merlin, Inc.*, 335 So.2d 273 (Fla.1976). No one has alleged that Ms. Skantar was a "minor child" under the terms of the statute at the time of her death.

■ Mr. Lavoie has made no allegations of dependency. The facts presented through the petitioners' deposition of Mr. Lavoie suggest that he and his daughter exchanged gifts and telephone calls, but no services or support in any form. Thus, Mr. Lavoie is precluded from recovery under the statute. *See Bassett v. Merlin, Inc.*, *supra*, 335 So.2d 273 (holding statute constitutional although it precludes parents of adult child from recovery for mental pain and suffering).

Thus the question is whether Ms. Skantar's mother was "dependent" on her for support or services within the meaning of the statute. The status of dependency under the prior statute, and presumably also under the current statute, enacted in 1972, is determinable by factual circumstances existing at death. *Wadsworth v. Friend*, 201 So.2d 641 (Fla.Dist.Ct.App.1967). We do not find cases providing specific guid-

ance to the measure of dependency required to make parents "survivors" under the statute, and so we must look to decisions as to other relatives.

Ms. Hettiger draws our attention to *Owens v. Jackson*, 493 So.2d 507 (Fla.Dist.Ct. App.1986), *review denied*, 503 So.2d 327 (Fla.1987), where the First District determined that the stringent measure of dependency established in *Duval v. Hunt*, 34 Fla. 85, 15 So. 876 (1894) has been superseded by statute.

We note that the facts in *Owens* provided a particularly strong case for dependency; that the rejection of *Duval v. Hunt* seems to have been relatively narrow, specifically concerning the requirement of physical and mental limitations; and that the Third District in *Guillen v. Kitching*, 354 So.2d 900 (Fla.Dist.Ct.App.1978), *cert. denied*, 361 So.2d 832 (Fla.1978), chose to cite *Duval v. Hunt* in approving a trial court decision under the same statute interpreting "survivors" as follows:

> "That notwithstanding the liberal construction to be applied in accordance with Florida Statutes 768.17, this Court construes a blood relative, partly or wholly dependent on a decedent for support or services, to require actual dependency, though same may be partial, in order to qualify as a 'survivor' under the 'Florida Wrongful Death Act', and the word 'dependent' connotes one who looks to another for aid or support, relies upon same, and one who would not be able to sustain himself without such aid or support...."

*Id.* at 901, citing *Duval v. Hunt, supra*, 34 Fla. 85, 15 So. 876 (1984), and *Burgh v. Carroll*, 217 So.2d 353 (Fla.Dist.Ct.App. 1969).

It appears that Ms. Hettiger's only possible claim would be based upon some understanding entered into with her daughter before her daughter's death, and that if the measure of dependency established under the previous statute is still applicable, Ms. Hettiger would have no cognizable claim under Florida law. *See Burgh v. Carroll*, 217 So.2d 353 (Fla.Dist.Ct.App.1969) (prom-

ise by decedent uncle to provide mortgage payments, coupled with detrimental reliance on that promise and with performance by uncle during his lifetime, did not create cause of action in niece absent showing of dependency on uncle for support).

Given the possible conflict between the Florida appellate courts as to the measure of dependency, we would prefer not to define parental dependency for the state of Florida. We need not do so, because another and better course available to us under *Moragne* is to extrapolate from DOHSA.

## GENERAL FEDERAL MARITIME LAW

The sources of law discussed in *Moragne* itself as potential guides for the development of law on this point were all federal (*i.e.*, DOHSA, the Jones Act, and the Longshore and Harbor Workers Compensation Act), and the statute that received the most favorable attention from the Court was DOHSA (*see Moragne*, 398 U.S. at 406–08, 90 S.Ct. at 1790–91). DOHSA provides that "the personal representative of the decedent may maintain a suit for damages ... for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative...." (46 U.S.C. § 761). Several lower courts did then allow recovery under the general maritime law using DOHSA's schedule of beneficiaries. (*E.g., In re Cambria Steamship Co.*, 353 F.Supp. 691, 697 (N.D.Ohio, E.D.1973), *affd.* 505 F.2d 517 (6th Cir.1974), *cert. denied, Gordon v. Dahl*, 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975); *Green v. Ross*, 338 F.Supp. 365, 366 (S.D.Fla.1972), *aff'd*, 481 F.2d 102 (5th Cir), *cert. denied*, 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 473 (1973)). In *Higginbotham*, [*Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978)] the Court again seemed to invite the use of DOHSA as a model for the courts to follow in establishing a uniform schedule of beneficiaries. (436 U.S. at 624, n. 19, 98 S.Ct. at 2014, n. 19.)

Assuming that we follow DOHSA in providing a remedy for the parents of a decedent, we must next determine what damages parents can recover. In *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 588, 94 S.Ct. 806, 816, 39 L.Ed.2d 9 (1974), the Supreme Court determined that a recovery for wrongful death in territorial waters can include damages for "loss of support, services and society." *Id.* at 584, 94 S.Ct. at 814. Recovery for wrongful death on the high seas, however, was thereafter specifically limited to the "pecuniary loss" set forth in DOHSA. *Mobil Oil v. Higginbotham, supra*, 436 U.S. at 624, 98 S.Ct. at 2014. The *Higginbotham* Court stated, "It is true that the measure of damages in coastal waters will differ from that on the high seas, but even if this difference proves significant, a desire for uniformity cannot override the statute."

■ We must again draw a distinction between the allegations of Doris Hettiger and those of Harold Lavoie. The Fifth Circuit has determined that the non-dependent parents of a decedent killed in territorial waters and survived by a spouse and/or children cannot recover for "loss of society." *Sistrunk v. Circle Bar Drilling Co.*, 770 F.2d 455 (1985), *cert. denied*, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986). The Second Circuit has not addressed this point. The facts suggest that Mr. Lavoie has suffered only the loss of "love, affection, care, attention, companionship, comfort, and protection" that the *Gaudet* Court characterized as "loss of society" (414 U.S. at 585, 94 S.Ct. at 815). While his loss is certainly a grave one, if we follow the Fifth Circuit, it is not compensable in damages.

In order to enhance the uniformity of the general maritime law, and in acknowledgment of the wisdom and authority of Congress in considering and deciding policy matters, we hold, in accord with the Fifth Circuit, that the non-dependent parent of a decedent killed in territorial waters and survived by a spouse cannot recover for "loss of society." Thus we find that Mr. Lavoie has not stated a cause of action under the general maritime law.

The loss alleged by Ms. Hettiger, however, is better characterized as a loss of "services" and would appear to be closely

related to pecuniary loss. (*Cf. Morvant v. Construction Aggregates Corp.*, 570 F.2d 626, 633 and n. 7 (6th Cir.) *cert. dismissed,* 439 U.S. 801, 99 S.Ct. 44, 58 L.Ed.2d 94 (1978) (household tasks performed by decedent are includable in damages as pecuniary loss under Jones Act and general maritime law)). According to her allegations, Ms. Hettiger was in some measure dependent upon the financial assistance provided by decedent's in-kind services in the butcher shop, particularly because the butcher shop was in bad financial condition.

The *Gaudet* Court noted that "the overwhelming majority of state wrongful-death acts and courts interpreting the Death on the High Seas Act have permitted recovery for the monetary value of services the decedent provided and would have continued to provide but for his wrongful death." (414 U.S. at 585, 94 S.Ct. at 815), citations omitted; see also *The S/S Black Gull,* 90 F.2d 619, 620–21 (2d Cir.), *cert. denied sub nom. Faye v. American Diamond Lines,* 302 U.S. 728, 58 S.Ct. 50, 82 L.Ed. 562 (1937), ("pecuniary loss" damages under DOHSA "should be gauged by the reasonable expectation of pecuniary benefits which would have flowed from the continued life of the deceased.") We find that services rendered by a decedent to his dependent parents must be allowed as elements of damage under *Moragne.*

The question then is how to measure parental dependency. In *Wende v. McManigal,* 135 F.2d 151 (2d Cir.1943), the Second Circuit held that parents' partial dependency upon a child is sufficient to authorize a wrongful death award under the Longshore and Harbor Workers' Compensation Act. In a concurring opinion, Judge Frank formulated the test as "whether [the child's] contribution was in whole or in part a means of maintaining [the parents] in the manner in which they had been living and whether they looked forward to and relied upon the continuance of decedent's contributions to that end." *Id.* at 152.

The defendant in the instant case alleges that at the time of her death Ms. Skantar can no longer have been providing the services described in Ms. Hettiger's papers because Ms. Hettiger sold the butcher shop some months prior to Ms. Skantar's death. It is a general rule that dependency must exist at the time of death for purposes of wrongful death recovery. *Myers v. Bethlehem Steel Co.,* 250 F.2d 615, 617 (4th Cir.1957); *Petition of ABC Charters, Inc.,* 558 F.Supp. 367 (W.D. Wash.1983); *Rust v. Holland,* 15 Ill.App.2d 369, 146 N.E.2d 82 (Ill.App.1957). However, Ms. Hettiger alleges partial dependency upon her daughter by reason of the free labor described above, and it appears that Ms. Hettiger repurchased the butcher shop in 1987. On a motion to dismiss, doubts should be resolved in favor of the pleader. *Williams v. Gorton,* 529 F.2d 668, 672 (9th Cir.1976). Ms. Hettiger should have the opportunity to present evidence of any agreements that might have existed between herself and her daughter at the time of the daughter's death, and that might have been relied upon, for example, in any sale/repurchase agreement entered into while Ms. Skantar was alive.

For the reasons stated above, the motion to dismiss is granted as to Harold Lavoie, and denied as to Doris Hettiger. An evidentiary hearing will be held as to the claims asserted by Doris Hettiger on November 18, 1987 at 4:30 P.M.

SO ORDERED.