4 F.3d 1084
 Prod.Liab.Rep.(CCH)P 13,630
Donald WAHLSTROM and Irene Wahlstrom, Administrators of the
Estate of Scott Wahlstrom, Plaintiffs-Appellants,
v.
KAWASAKI HEAVY INDUSTRIES, LTD., Kawasaki Motors Corp.,
U.S.A., Kawasaki Motors Manufacturing Corp.,
U.S.A., Defendants-Appellees.
 No. 774, Docket 92-7948.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 5, 1993.
Decided Sept. 13, 1993.
 
 Richard L. Newman, Bridgeport, Conn. (Michael F. Ewing, Cohen & Wolf, of counsel), for plaintiffs-appellants.
 Richard A. Mueller, Coburn & Croft, St. Louis, Mo. (Trudie R. Hamilton, William I. Garfinkel, Carmody & Torrance, Waterbury, Conn., of counsel), for defendants-appellees.
 Before: PRATT and MAHONEY, Circuit Judges, and ZAMPANO,* District Judge.
 MAHONEY, Circuit Judge:
 
 
 1
 Donald and Irene Wahlstrom ("the Wahlstroms") appeal from a judgment entered August 25, 1992 in the United States District Court for the District of Connecticut, Alan H. Nevas, Judge, that granted defendants' motion for summary judgment and dismissed the Wahlstroms' state law claims for the wrongful death of their son on the basis that a case involving a collision between two pleasure craft on navigable waters falls within the court's admiralty jurisdiction and, under general maritime law, recovery of wrongful death damages is barred where plaintiffs are not dependents of the decedent. We conclude that the state law claims were properly dismissed because actions brought under the federal courts' admiralty jurisdiction are governed solely by federal maritime law. We also conclude, however, that the Wahlstroms have stated, at least to some extent, a valid claim for wrongful death damages under federal maritime law as to which there are disputed issues of material fact. Accordingly, the judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion.
 
 Background
 
 2
 The facts in this case are straightforward and undisputed. On June 19, 1988, Scott Wahlstrom ("Scott"), the 17-year old son of the Wahlstroms, was killed when the rented Kawasaki 650 SX Jet Ski that he was operating collided with a twenty-foot power boat on the Thames River, a navigable waterway, within Connecticut territorial waters. The Wahlstroms, as the administrators of Scott's estate, brought an action under the Connecticut Product Liability Act, Conn.Gen.Stat. Sec. 52-572m et seq. (1991), and the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. Sec. 42-110a et seq. (1992), against Kawasaki Heavy Industries, Ltd., Kawasaki Motors Corp., U.S.A., and Kawasaki Motors Manufacturing Corp., U.S.A. (collectively "Kawasaki"), the companies that designed, manufactured, and distributed the rented Jet Ski that Scott was using at the time of his accident, basing federal jurisdiction upon diversity of citizenship. The Wahlstroms sought compensatory damages, attorney fees pursuant to Conn.Gen.Stat. Sec. 52-240a (1991), and punitive damages pursuant to Conn.Gen.Stat. Secs. 52-240b (1991) and 42-110g(a) (1992).
 
 
 3
 Kawasaki moved for summary judgment on the basis that the action was governed solely by federal maritime law, which barred the Wahlstroms from any recovery. Opposing the motion, the Wahlstroms argued that the case was governed by Connecticut law, but even if federal maritime law applied, Scott's estate was entitled to recover damages. Judge Nevas referred the case to Magistrate Judge Arthur H. Latimer to rule on that motion.
 
 
 4
 In a recommended ruling issued April 7, 1992, Magistrate Judge Latimer determined that Kawasaki's motion should be granted. See Wahlstrom v. Kawasaki Heavy Indus., Ltd., 800 F.Supp. 1061 (D.Conn.1992). He concluded that the case was governed by federal maritime law, id. at 1062-63, and that "the general maritime law does not allow the nondependents of a decedent who is not a seaman to recover wrongful death damages for his death arising in state territorial waters." Id. at 1063 (citing Anderson v. Whittaker Corp., 692 F.Supp. 764, 770-73 (W.D.Mich.1988), aff'd in part, rev'd in part on another ground, 894 F.2d 804 (6th Cir.1990); Truehart v. Blandon, 672 F.Supp. 929, 936-38 (E.D.La.1987)). Reviewing the applicable Supreme Court precedents, Magistrate Judge Latimer stated:
 
 
 5
 A collective reading of these cases reveals three points: (1) the Supreme Court has never held that a nondependent beneficiary may recover loss of society, i.e., non-pecuniary, damages in a general maritime wrongful death action; (2) the explicit language of the DOHSA does not permit the recovery of non-pecuniary damages, nor may such recovery be supplemented by state wrongful death statutes or the general maritime law where the DOHSA governs; and (3) the Jones Act does not provide wrongful death damages to the nondependent survivors of a deceased seaman.
 
 
 6
 Id. at 1065.
 
 
 7
 Stressing the need for uniformity in admiralty law, the anomaly of allowing a recovery to the Wahlstroms that would not be available to them if Scott had been a member of the specially favored class of seamen, and the overall fairness of a distinction between dependents and nondependents, the magistrate judge concluded that the Wahlstroms' claims, including their application for punitive damages, should be dismissed. Id. at 1065-66.
 
 
 8
 The Wahlstroms objected to this recommended ruling, contending that "admiralty jurisdiction is inappropriate in this products liability case," and in any event that the magistrate judge had erred in his analysis of federal maritime law. After review and over the Wahlstroms' objections, however, the district court approved and adopted the magistrate judge's recommended ruling. Id. at 1061.
 
 
 9
 Judgment was then entered in favor of Kawasaki. This appeal followed.
 
 Discussion
 
 10
 It is settled law that a tort claim involving a collision between two vessels, used for pleasure or commercial purposes, on navigable waters comes within the admiralty jurisdiction of the federal courts. See Foremost Ins. Co. v. Richardson, 457 U.S. 668, 677, 102 S.Ct. 2654, 2659, 73 L.Ed.2d 300 (1982); In re Guglielmo, 897 F.2d 58, 61 (2d Cir.1990). The parties to this appeal do not dispute that both the Jet Ski operated by Scott and the power boat involved in the collision are vessels under 1 U.S.C. Sec. 3 (1988),[1] or that the Thames River (at the location where the fatal collision occurred) is a navigable waterway. Further, the Wahlstroms concede on appeal that this case falls within the admiralty jurisdiction of the federal courts. With this jurisdiction comes the application of substantive maritime law, and absent a relevant federal statute, we apply the general maritime law as developed by the courts. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864, 106 S.Ct. 2295, 2298, 90 L.Ed.2d 865 (1986). That law includes elements adopted from the law of products liability. See id. at 865-66, 106 S.Ct. at 2299.
 
 
 11
 The Wahlstroms advance two contentions on appeal: (1) federal maritime law does not preclude the application of state wrongful death statutes, and therefore the Connecticut Products Liability Act and its wrongful death provisions should govern this action; or (2) in the alternative, if this court finds that federal maritime law governs, the principles underlying the Connecticut wrongful death provisions should be used to fashion the federal maritime remedy. Before considering these contentions, we address a preliminary matter.
 
 
 12
 The Wahlstroms did not request relief under federal maritime law in their complaint; rather, they raised only state law claims. Nor did they seek leave to file an amended complaint to include a claim for wrongful death damages under federal maritime law. Kawasaki, however, raised the applicability of federal maritime law as an affirmative defense, and this issue was extensively discussed by Magistrate Judge Latimer in his recommended ruling. Further, the parties' briefs and oral argument on appeal focused squarely on the issue of what relief, if any, is available to the Wahlstroms under federal maritime law. Accordingly, we deem the Wahlstroms' complaint to be constructively amended to include a claim for relief for wrongful death damages under federal maritime law. See 6A Charles A. Wright et al., Federal Practice and Procedure Sec. 1494, at 55-56 (2d ed. 1990) (appellate courts, using Fed.R.Civ.P. 15(b) by way of analogy, permit constructive amendment of pleadings "only when the effect will be to acknowledge that certain issues upon which the lower court's decision has been based or issues consistent with the trial court's judgment have been litigated"); see also Purofied Down Prods. Corp. v. Travelers Fire Ins. Co., 278 F.2d 439, 444 (2d Cir.1960) (where insurer did not assert counterclaim for back premiums and issue was not raised by pleadings, but attorney for insured admitted premiums were due, appellate court deemed pleadings amended to conform to the evidence); Menefee v. W.R. Chamberlin Co., 183 F.2d 720, 721 (9th Cir.1950) (where injured seaman alleged only leg injury but evidence of back injury was also presented without objection, the back injury was regarded on appeal as matter that had been tried by lower court); cf. Walton v. Jennings Community Hosp., Inc., 875 F.2d 1317, 1320 n. 3 (7th Cir.1989) (collecting cases in which district and appellate courts allowed constructive amendment of complaints).
 
 
 13
 A. Application of State Law in a Maritime Wrongful Death Action.
 
 
 14
 Magistrate Judge Latimer dismissed the Wahlstroms' state law claims because those claims " 'would be in conflict with the applicable substantive admiralty law.' " Wahlstrom, 800 F.Supp. at 1063 (quoting Icelandic Coast Guard v. United Technologies Corp., 722 F.Supp. 942, 949 (D.Conn.1989)). According to Magistrate Judge Latimer, because Connecticut tort law would permit recovery of damages by nondependent beneficiaries and maritime law would not, the Supremacy Clause mandates preemption of state law in this case. Id. We go further and hold that federal maritime law, whether or not it conflicts with state law, applies to actions for wrongful death in state territorial waters brought under the admiralty jurisdiction of the federal courts. We premise this holding upon Supreme Court precedent which, over the past thirty-three years, has transformed the face of the federal maritime wrongful death remedy.
 
 
 15
 In The Harrisburg, 119 U.S. 199, 213, 7 S.Ct. 140, 146, 30 L.Ed. 358 (1886), the Supreme Court, after reviewing maritime law "as accepted and received by maritime nations generally," held that there was no right to recover for wrongful death under the general maritime law "in the absence of a statute giving the right." The Court "express[ed] no opinion" whether a suit could be maintained under a state wrongful death statute, because the suit at issue would have been barred in any event by the applicable state statutes of limitations. Id. at 214, 7 S.Ct. at 147. In Western Fuel Co. v. Garcia, 257 U.S. 233, 242, 42 S.Ct. 89, 90, 66 L.Ed. 210 (1921), however, the Court did reach the issue and held that state wrongful death statutes could provide a remedy for a wrongful death in state territorial waters.
 
 
 16
 In 1920, Congress changed the complexion of the recovery available for wrongful death under maritime law by passing two statutes which specifically afforded federal remedies for wrongful death to certain classes of plaintiffs in maritime actions. One statute, the Death on the High Seas Act ("DOHSA"), 46 U.S.C.app. Secs. 761-767 (1988), gave the representative of anyone killed on the high seas (i.e., more than three miles from shore) the right to bring a wrongful death action.[2] DOHSA explicitly does not apply to "any waters within the territorial limits of any State." Id. Sec. 767. The second statute, the Jones Act, 46 U.S.C.app. Sec. 688 (1988), gave the personal representative of a seaman who died in the course of employment the right to maintain a wrongful death action for negligence.[3] There was still, however, no right of recovery under the general maritime law for deaths in state territorial waters of nonseamen or seamen who died as a result of a vessel's unseaworthiness rather than negligence. Thus, after the enactment of DOHSA and the Jones Act, some actions for wrongful death in territorial waters could still be brought under state wrongful death statutes. See, e.g., The Vessel M/V "Tungus" v. Skovgaard, 358 U.S. 588, 592, 79 S.Ct. 503, 506, 3 L.Ed.2d 524 (1959) (right of recovery for wrongful death in state territorial waters, and limitations on that right, were those established by state law).
 
 
 17
 All of this changed with the Supreme Court's decision in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In Moragne, the Court overruled The Harrisburg and held that "an action does lie under general maritime law for death caused by violation of maritime duties." Id. at 409. The Court was addressing the specific issue of what, if any, remedy should be available for a wrongful death caused within state territorial waters by a vessel's unseaworthiness, a claim for which there was no right of recovery under applicable state law. Id. at 376-77. In fashioning the remedy, however, the Supreme Court did not limit the new right of recovery to unseaworthiness claims, but instead established a general remedy for wrongful death under maritime law. In doing so, the Court stated:
 
 
 18
 Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts. E.g., Hess v. United States, 361 U.S. 314 [80 S.Ct. 341, 4 L.Ed.2d 305] (1960); Goett v. Union Carbide Corp., 361 U.S. 340 [80 S.Ct. 357, 4 L.Ed.2d 341] (1960). Such uniformity not only will further the concerns of [DOHSA and the Jones Act] but also will give effect to the constitutionally based principle that federal admiralty law should be a "system of law coextensive with, and operating uniformly in, the whole country." The Lottawanna, [88 U.S. 558] 21 Wall. 558, 575 [22 L.Ed. 684] (1875).
 
 
 19
 Id. at 401-02 (footnote omitted). In our view, the Supreme Court's creation in Moragne of a federal wrongful death action under general maritime law precludes the use of state wrongful death statutes in maritime claims. Without such preclusive effect, "the tensions and discrepancies" resulting from application of state remedial statutes could not be removed.
 
 
 20
 This view is fortified by rulings of the Supreme Court and other federal courts. In Mobil Oil Corp. v. Higginbotham, 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Supreme Court recognized that under Moragne one national rule applies to fatalities in territorial waters. According to the Court, the Moragne rule of uniformity was needed because, at the time the case was decided, "fatal accidents on the high seas had an adequate federal remedy, while the same accidents nearer shore might yield more generous awards, or none at all, depending on the law of the nearest State." Id. at 624 n. 18. Other courts have concluded that after Moragne, federal maritime law " 'displaces state wrongful death statutes in territorial waters.' " Neal v. Barisich, Inc., 707 F.Supp. 862, 866 & n. 5 (E.D.La.) (quoting Thurmond v. Delta Well Surveyors, 836 F.2d 952, 958 n. 2 (5th Cir.1988) (Garwood, J., concurring)) (collecting cases), aff'd mem., 889 F.2d 273 (5th Cir.1989); see also Nelson v. United States, 639 F.2d 469, 473 (9th Cir.1980) (holding that "the need for uniformity in maritime wrongful death actions requires extension of Moragne to cover claims based on negligence, to the exclusion of state wrongful death statutes"); In re S/S Helena (Sincere Navigation Corp. v. United States), 529 F.2d 744, 753 (5th Cir.1976) (Moragne wrongful death remedy "precludes recognition in admiralty of state statutes"); Shield v. Bayliner Marine Corp., 822 F.Supp. 81, 83 (D.Conn.1993) ("The fact that plaintiff relies partly on diversity jurisdiction does not affect the rule that maritime law applies. Thus, to the extent plaintiff seeks to recover under Connecticut state law, his claim must be dismissed.") (citing Wahlstrom, 800 F.Supp. at 1062-63); Gilmore v. Witschorek, 411 F.Supp. 491, 494 (E.D.Ill.1976) (same); cf. Icelandic Coast Guard, 722 F.Supp. at 949 ("Even if plaintiff's commercial losses would be cognizable under the applicable state tort law products liability scheme of either Iceland or Connecticut, claims for such losses nonetheless are not permitted where they would be in conflict with the applicable substantive admiralty law [footnote omitted]."); In re DFDS Seaways (Bahamas) Ltd., 684 F.Supp. 1160, 1162 (S.D.N.Y.1987) ("It is well settled that federal maritime law is to be applied to the exclusion of conflicting state law even in state courts."); Complaint of Cambria S.S. Co. (Rischmiller v. Dahl), 505 F.2d 517, 521 (6th Cir.1974) (although death occurred in state territorial waters, court declined to apply state law because post-Moragne appellate decisions "have endeavored generally to develop a uniform body of federal law, neither borrowing automatically from federal statutory provisions, nor applying any particular state law"), cert. denied, 420 U.S. 975, 95 S.Ct. 1399, 43 L.Ed.2d 655 (1975). Accordingly, we conclude that federal maritime law, rather than Connecticut law, must be applied in the present case.
 
 
 21
 B. Wrongful Death Action under Federal Maritime Law.
 
 
 22
 Moragne established a wrongful death action under the general maritime law. The court refrained in Moragne, however, from addressing any "subsidiary issues" relating to the new cause of action, such as the measure of damages and the schedule of beneficiaries, preferring that the "final resolution" of such questions "await further sifting through the lower courts in future litigation." 398 U.S. at 408, 90 S.Ct. at 1792. These issues are presented for consideration in this case.
 
 
 23
 1. Right of a Nondependent Parent to Recover for the Wrongful Death of a Child.
 
 
 24
 Magistrate Judge Latimer held that the Wahlstroms were barred from any recovery because "the general maritime law does not allow the nondependents of a decedent who is not a seaman to recover wrongful death damages for his death arising in state territorial waters." 800 F.Supp. at 1063 (citing Anderson, 692 F.Supp. at 770-73; Truehart, 672 F.Supp. at 936-38). This conclusion is overbroad, and is not supported by the cases invoked in its behalf. Anderson awarded damages for loss of support and services, and loss of society, only to the dependent survivors (widows and children) of two persons killed in a boating accident, and specifically disallowed such damages for the nondependent parents of the other two persons who were fatally injured in that accident. 692 F.Supp. at 769-73. Survival damages (for the decedents' pain and suffering prior to death) were awarded, however, to all of the plaintiffs, both dependents and nondependents. Id. at 773-74. Thus, Anderson limits the damages that may be awarded, but does not support the proposition that no damages may be awarded, to a nondependent parent.
 
 
 25
 Similarly, Truehart dismissed the claim for loss of society of the nondependent survivors (two parents and two siblings) of a person killed in a boating accident, but did not dismiss the complaint. 672 F.Supp. at 930, 938. Indeed, emphasizing the fact that the litigation was to continue as to the plaintiffs' other claims, the district court certified the loss of society ruling for immediate appellate review pursuant to 28 U.S.C. Sec. 1292(b) (1988). 672 F.Supp. at 938; see also id. at 934 n. 4 ("even if not entitled to loss-of-society damages, nondependent survivors may still maintain wrongful death actions for pecuniary damages such as funeral expenses and, perhaps, loss of services"). Moreover, the plaintiffs subsequently achieved a $53,000 settlement of their remaining claims. See Truehart v. Blandon, 696 F.Supp. 210, 211 (E.D.La.1988), rev'd on other grounds, 884 F.2d 223 (5th Cir.1989); see also Cantore v. Blue Lagoon Water Sports, Inc., 799 F.Supp. 1151, 1152 (S.D.Fla.1992) (parents of decedent killed in fatal Jet Ski accident may recover medical and funeral expenses, but for loss of society only if actual financial dependency on decedent is proven, and for loss of services only if actual pecuniary damages proven for loss of valuable services; estate may recover for decedent's pain and suffering before death, but not for future economic loss).
 
 
 26
 It is therefore inappropriate to rule that the Wahlstroms may achieve no recovery for their son's wrongful death. The Supreme Court counselled in Higginbotham that: "As Moragne itself implied, DOHSA should be the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right." 436 U.S. at 624, 98 S.Ct. at 2014 (footnote omitted). The pertinent provision of DOHSA, 46 U.S.C.app. Sec. 761, authorizes the personal representative of a decedent to sue "for the exclusive benefit of the decedent's wife, husband, parent, child or dependent relative," see supra note 2, thus indicating that a parent need not be a dependent of the decedent to have standing to recover some damages. See First Nat'l Bank v. National Airlines, 288 F.2d 621, 624 (2d Cir.) (DOHSA "requires a showing of dependency on the part of all claimants except a wife, husband, parent or child of the decedent"), cert. denied, 368 U.S. 859, 82 S.Ct. 102, 7 L.Ed.2d 57 (1961). The companion provision, 46 U.S.C.app. Sec. 762, however, limits a DOHSA recovery to "a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought," see supra note 2, indicating that the focus of our analysis should be upon the elements of damage recoverable by nondependent parents such as the Wahlstroms. We proceed to that inquiry.
 
 
 27
 2. The Elements of Damages Recoverable by a Nondependent Parent for the Wrongful Death of a Child.
 
 
 28
 The predominant issue on this appeal is the availability of damages for loss of society to the nondependent parents of a decedent who perishes under circumstances giving rise to admiralty jurisdiction. We shall accordingly address our initial attention to this aspect of the Wahlstroms' claim, and then consider other elements of damages at least arguably encompassed by the Wahlstroms' demand for compensatory and punitive damages in their complaint. We begin this inquiry by reviewing the post-Moragne decisions of the Supreme Court in this area.
 
 
 29
 In its first subsequent visitation of the admiralty wrongful death action established in Moragne, the Supreme Court ruled in Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), that in the case of a longshoreman who died as a result of severe injuries incurred on a vessel in Louisiana navigable waters, "the decedent's dependents may recover damages for their loss of support, services, and society, as well as funeral expenses." Id. at 584; see also id. at 591 ("in addition to recovery for loss of support, services, and society, damages for funeral expenses may be awarded under the maritime wrongful-death remedy in circumstances where the decedent's dependents have either paid for the funeral or are liable for its payment").
 
 
 30
 The Court next ruled in Higginbotham that the Gaudet allowance of loss-of-society damages to a dependent of a decedent who perished in territorial waters could not be extended to the high seas in view of the DOHSA limitation of damages to "pecuniary loss," see 436 U.S. at 622-26, 98 S.Ct. at 2013-15, and reiterated this ruling in Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 216, 233, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986). Both Higginbotham and Tallentire, like Gaudet and Moragne, were suits by dependent widows of the decedents.
 
 
 31
 Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990), addressed, however, the situation of a nondependent mother who sought loss-of-society damages for the death in territorial waters of her seaman son. The Fifth Circuit had held that "in a general maritime wrongful death action nondependent parents may not recover for loss of society whether or not their deceased children were survived by spouse or child." Miles v. Melrose, 882 F.2d 976, 989 (5th Cir.1989), aff'd sub nom. Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The Supreme Court affirmed on the differing ground "that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman," 498 U.S. at 33, 111 S.Ct. at 326, thus "restor[ing] a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law." Id. The Court also stated that: "The holding of Gaudet applies only in territorial waters, and it applies only to longshoremen." Id. at 31, 111 S.Ct. at 325.
 
 
 32
 As Magistrate Judge Latimer noted, none of these cases support the recovery of loss-of-society damages by a nondependent beneficiary in a general maritime wrongful death action, and both DOHSA and the Jones Act have been construed by the Court to bar such damages where those statutes apply. See 800 F.Supp. at 1065. This does not settle the question presented by this appeal, however, because neither DOHSA nor the Jones Act is applicable, and no Supreme Court ruling bars the award of loss-of-society damage to the Wahlstroms.
 
 
 33
 On the other hand, a number of other federal courts have explicitly addressed the issue whether nondependent parents may recover loss-of-society damages for a death in territorial waters, and have almost unanimously responded in the negative. Both the Fifth Circuit, see Miles, 882 F.2d at 989, and Sixth Circuit, see Anderson, 894 F.2d at 812, have so ruled, and most of the pertinent district court decisions concur. See Cantore, 799 F.Supp. at 1155; Kline v. Maritrans CP, Inc., 791 F.Supp. 455, 461 (D.Del.1992) (Jones Act seaman); Rollins v. Peterson Builders, Inc., 761 F.Supp. 918, 929 (D.R.I.1990) (on reconsideration, reversing prior ruling in light of Miles v. Apex Marine Corp.); Anderson, 692 F.Supp. at 771-72; DFDS Seaways, 684 F.Supp. at 1164 (no recovery for nondependent parent of decedent survived by a spouse); Glod v. American President Lines, 547 F.Supp. 183, 186 (N.D.Cal.1982) (nondependent siblings). But see Thompson v. Offshore Co., 440 F.Supp. 752, 764-65 (S.D.Tex.1977); Palmer v. Ribax, Inc., 407 F.Supp. 974, 979 (M.D.Fla.1976); Hamilton v. Canal Barge Co., 395 F.Supp. 978, 985 (E.D.La.1975). Thompson and Hamilton can no longer be regarded as authoritative in light of the subsequent evolution of Fifth Circuit law. See Miles, 882 F.2d at 989 (no recovery by nondependent parents in general maritime wrongful death action); Sistrunk v. Circle Bar Drilling Co., 770 F.2d 455, 458 n. 2 (5th Cir.1985) (Hamilton undermined by Supreme Court ruling in Higginbotham), cert. denied, 475 U.S. 1019, 106 S.Ct. 1205, 89 L.Ed.2d 318 (1986).
 
 
 34
 We agree with the overwhelming majority of the pertinent federal decisions that nondependent parents cannot recover damages for loss of society in a general maritime action. We recognize the argument that an essentially pecuniary standard such as dependency should not provide the dividing line on this issue, given the nature of loss-of-society damages. See Gaudet, 414 U.S. at 585, 94 S.Ct. at 815. ("The term 'society' embraces a broad range of mutual benefits each family member receives from the others' continued existence, including love, affection, care, attention, companionship, comfort and protection."); Thompson, 440 F.Supp. at 765 ("because a loss of society is not a financial loss, it would be inappropriate to conclusively presume that only those family members financially dependent on the decedent have suffered such a loss"). Countervailing concerns nonetheless outweigh the force of this contention.
 
 
 35
 The primary considerations that we must consult in resolving this issue are "the humane policies implicit in the judicially created cause of action [for maritime wrongful death] and ... the interest in the uniform administration of admiralty actions." Public Adm'r v. Angela Compania Naviera, S.A., 592 F.2d 58, 63 (2d Cir.), cert. dismissed, 443 U.S. 928, 100 S.Ct. 15, 61 L.Ed.2d 897 (1979). It would hardly promote the uniform administration of admiralty actions for this circuit to adopt a rule in conflict with almost every decided federal case on this issue. In addition, in view of the special regard accorded by admiralty to seamen, it would be anomalous to expand the class of beneficiaries of nonseamen who may recover for loss of society in the aftermath of the Supreme Court's denial of any such recovery to the beneficiaries of seamen. See Miles, 498 U.S. at 33, 111 S.Ct. at 326 (denying any recovery for loss of society to beneficiaries of seamen); see also Wahlstrom, 800 F.Supp. at 1066 (citing Miles, 498 U.S. at 36, 111 S.Ct. at 327, regarding special solicitude shown by admiralty for seamen and their families); Truehart, 672 F.Supp. at 927 ("General maritime law is its most generous to seamen, the wards of admiralty.").
 
 
 36
 Finally, a ruling in favor of the Wahlstroms on this issue would effectively extend the rule of Gaudet to nondependent parents of persons who die in territorial waters. This would hardly be consonant with the Court's unanimous statement in Miles that the holding of Gaudet applies only in territorial waters, and only to longshoremen. 498 U.S. at 31, 111 S.Ct. at 325. See Miller v. American President Lines, 989 F.2d 1450, 1459 (6th Cir.1993) (Miles limited Gaudet to its facts, but Gaudet is not applicable to those facts in view of subsequent enactment of Longshore and Harbor Workers Compensation Act; Gaudet thus "condemned to a kind of legal limbo: limited to its facts, inapplicable on its facts, yet not overruled"); Murray v. Anthony J. Bertucci Constr. Co., 958 F.2d 127, 130 (5th Cir.) (Miles limited Gaudet to its facts), cert. denied, --- U.S. ----, 113 S.Ct. 190, 121 L.Ed.2d 134 (1992). Even if the limitation of Gaudet in Miles is read, more favorably to Gaudet, as focused upon the distinction between longshoremen and seamen, we perceive no basis for an extension of Gaudet to allow recovery by nondependent parents under the general maritime law. Cf. Walker v. Braus, 995 F.2d 77, 82 (5th Cir.1993) (allowing widow of nonseaman deceased victim of accident in Louisiana territorial waters to recover for loss of consortium "would directly contradict the policy of uniformity emphasized and relied on by the Court in Miles").
 
 
 37
 For all these reasons, we conclude that the Wahlstroms may not recover damages for loss of society in this case, and proceed to address the other elements of damages that will require consideration upon remand.
 
 
 38
 The Wahlstroms may recover damages for funeral expenses to the extent that they paid for their son's funeral or are liable for that payment. See Gaudet, 414 U.S. at 591 & nn. 27-28, 94 S.Ct. at 818 & nn. 27-28; Cantore, 799 F.Supp. at 1156; Neal, 707 F.Supp. at 868 & nn. 14-15; Truehart, 672 F.Supp. at 936. They also may recover for related medical expenses. Cantore, 799 F.Supp. at 1156. Damages for mental anguish may not be recovered. See Gaudet, 414 U.S. at 585 n. 17, 94 S.Ct. at 815 n. 17; Thompson, 440 F.Supp. at 765. Loss of support or services is compensable, but only to the extent that the Wahlstroms anticipated future pecuniary benefits from support or services to be rendered to them by their deceased son. See Gaudet, 414 U.S. at 584-85, 94 S.Ct. at 814; In re P & E Boat Rentals, Inc. (Fusselman v. Ennia Gen. Ins. Co.), 872 F.2d 642, 649 (5th Cir.1989); Cantore, 799 F.Supp. at 1155; Kline, 791 F.Supp. at 462-469; DFDS Seaways, 684 F.Supp. at 1164-65.
 
 
 39
 C. Survival Action under Federal Maritime Law.
 
 
 40
 Magistrate Judge Latimer stated that the Wahlstroms had "apparently abandoned at oral argument any conceivable claim for survival as opposed to wrongful death damages." 800 F.Supp. at 1065. On appeal to the district court and to this court, the Wahlstroms argued primarily for wrongful death damages pursuant to Connecticut law, but cited a survival case, Evich v. Morris, 819 F.2d 256 (9th Cir.), cert. denied, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987), in both fora, and contended generally for "wrongful death and survivorship benefits" in their main brief to this court. We deem the issue of survivor damages preserved.
 
 
 41
 The distinction between survival and wrongful death actions was articulated by the Fifth Circuit in Miles as follows:
 
 
 42
 In a survival action, the estate or successors of a deceased person are allowed to prosecute a claim for personal injury that the deceased himself would have had but for his death. In a wrongful death action, the victim's dependents, not the victim, are allowed to recover for the harms they personally suffered as a result of the death, independent of any action the decedent may have had for his own personal injuries.
 
 
 43
 882 F.2d at 985; see also Shield, 822 F.Supp. at 83.
 
 
 44
 The elements of damage ordinarily pursued in a survival action are pain and suffering inflicted upon the decedent prior to death, and loss of future earnings. The Wahlstroms may recover damages for their son's pain and suffering prior to death, to the extent that it can be established at trial. See Miles, 882 F.2d at 985; Evich, 819 F.2d at 257-58; P & E Boat Rentals, 872 F.2d at 649-50; Shield, 822 F.Supp. at 83 (collecting cases); Cantore, 799 F.Supp. at 1156; Kline, 791 F.Supp. at 462-67. Evich also allowed recovery by the decedent's estate for loss of future earnings, reasoning that in the absence of dependent beneficiaries, "potential problems with double recovery do not exist," 819 F.2d at 258, and concluding that such a recovery " ' "better becomes the humane and liberal character of proceedings in admiralty." ' ". Id. (quoting Moragne, 398 U.S. at 387 (quoting The Sea Gull, 21 F.Cas. 909, 910 (C.C.D.Md.1865) (No. 12,578))). Most of the decided cases, however, are to the contrary.
 
 
 45
 The Supreme Court disallowed such a recovery in Miles. See 498 U.S. at 33-37. The Court's analysis relied heavily upon the decedent's status as a seaman and the resultant applicability of the Jones Act, see id. at 35-36, but the announced conclusion of its opinion (unlike the companion ruling as to loss of society) was not confined to seamen. See id. at 37 ("We ... hold that a general maritime survival action cannot include recovery for decedent's lost earnings.").
 
 
 46
 The circuit court ruling in Miles explicitly rejected Evich on this issue, 882 F.2d at 986, and concluded, without any reference to the decedent's seaman status, that "the general maritime law does not permit a survival action for the decedent's lost future wages." Id. at 987. The court noted that most state survival statutes and the Jones Act do not allow recovery for lost wages, and that DOHSA provides no action for any kind of survivorship benefit. Id.
 
 
 47
 A number of district court opinions also preclude recovery for lost future earnings in a federal maritime action. See Shield, 822 F.Supp. at 83; Cantore, 799 F.Supp. at 1155; Kline, 791 F.Supp. at 462 (seaman). We concur, concluding that the Wahlstroms may claim damages for their son's pain and suffering prior to death, but not for lost earnings. Nor may damages be awarded for loss of enjoyment of life. See Shield, 822 F.Supp. at 83-84 (citing In re Korean Air Lines Disaster, 807 F.Supp. 1073, 1080-83 (S.D.N.Y.1992)); see also In re Korean Air Lines Disaster, 814 F.Supp. 592, 599 (E.D.Mich.1993).
 
 
 48
 D. Punitive Damages.
 
 
 49
 Since the Wahlstroms' complaint seeks punitive damages, and we have deemed the complaint amended to state a claim under general maritime law, the issue is presented whether they may recover punitive damages under that law.
 
 
 50
 Magistrate Judge Latimer dismissed the Wahlstroms' claim for punitive damages, stating:
 
 
 51
 In light of the decision to grant judgment against plaintiffs' state wrongful death claim as a matter of law, any claim for punitive damages must also be dismissed. Cf. Neal v. Barisich, Inc., supra [707 F.Supp.] at 873 (holding that because punitive damages are non-pecuniary, a plaintiff has standing to seek them under the general maritime law only if having standing to seek other nonpecuniary losses); cf. also Alcorn County, Miss. v. U.S. Interstate Supplies, Inc., 731 F.2d 1160, 1170 (5 Cir.1984).
 
 
 52
 800 F.Supp. at 1066.
 
 
 53
 We are in general agreement with the view that plaintiffs who are not allowed by general maritime law to seek nonpecuniary damages for loss of society should also be barred from seeking nonpecuniary punitive damages. In addition, a number of district courts have invoked the Supreme Court's ruling in Miles as a basis to disallow punitive damages for claims under the general maritime law in order to further uniformity between that law and the analogous federal statutes, DOHSA and the Jones Act. See, e.g., CEH, Inc. v. FV "Seafarer", 148 F.R.D. 469, 472 (D.R.I.1993) (collecting cases); Boykin v. Bergesen D.Y.A/S, 822 F.Supp. 324, 326 (E.D.Va.1993) (federal decisions are "increasingly less receptive to recovery of punitive damages in a general maritime law survival action"); Ortega v. Oceantrawl, Inc., 822 F.Supp. 621, 623 (D. Alaska 1992); In re Cleveland Tankers, Inc., 791 F.Supp. 679, 680-82 (E.D.Mich.1992). Most of these cases involved claims by seamen, and there are a few district court rulings to the contrary. See Cleveland Tankers, 791 F.Supp. at 682 n. 3 (collecting cases). Overall, however, this post-Miles authority lends additional support to our conclusion that the Wahlstroms should not be allowed to pursue punitive damages under the general maritime law.
 
 Conclusion
 
 54
 The judgment of the district court is vacated and the case is remanded for further proceedings not inconsistent with this opinion. On remand, the Wahlstroms may seek wrongful death damages for funeral and medical expenses, and loss of support and services, but not for loss of society. They may seek survival damages for their son's pain and suffering prior to death, but not for loss of future earnings or loss of enjoyment of life. They may not seek punitive damages.
 
 
 
 *
 The Hon. Robert C. Zampano, United States District Judge for the District of Connecticut, sitting by designation
 
 
 [1]
 "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. Sec. 3 (1988)
 
 
 [2]
 Section 761 provides:
 Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.
 Section 762 provides:
 The recovery in such suit shall be a fair and just compensation for the pecuniary loss sustained by the persons for whose benefit the suit is brought and shall be apportioned among them by the court in proportion to the loss they may severally have suffered by reason of the death of the person by whose representative the suit is brought.
 
 
 [3]
 Section 688 provides in pertinent part:
 (a) Application of railway employee statutes; jurisdiction
 ... [I]n case of the death of any seaman as a result of any ... personal injury [suffered in the course of his employment] the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable.